WHITTIER MACHINE COMPANY *vs.* PETER GRAFFAM.

Suffolk.     March 7, 1892. — May 17, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, LATHROP, & BARKER, JJ.

*Construction of Contract — Parol Evidence.*

An agreement between a manufacturing company and the owner of two houses described the articles to be furnished by the former to the latter as "two passenger elevators, each operated by one of our hydraulic hoisting machines upon a central pressure tank system." It was declared that each machine would lift a load of twelve hundred pounds at a speed of two hundred feet per minute with average loads. To operate the elevators the company agreed to furnish and set up "the pump, tanks, and hydraulic piping comprising our pressure tank system," according to specifications for a steam pump, among other things, and for its connections with the boiler so as to be ready for use; and the company also agreed to construct a boiler, with all its appointments, so as to make the apparatus complete for running the pump, as well as for heating the building by steam. The only reference to the use of water from the street main for power was an agreement to connect the water pipe with the pressure tank after the defendant had brought the water into the building, the contract stating that "this is for use when boiler or pump is out of order, or where the expense of running the boiler and pump would be greater than the expense of the city water." *Held,* in an action by the company to recover for the elevators and

apparatus, that the machine whose capacity was stated was the hydraulic hoisting machine, which included the pump by which the former was furnished, and the stipulation as to the capacity of each of the elevators, had reference to the machine as a whole, when run by the power to whose use it was adapted, and not to a part of the machine, to which a different kind of power might be applied in an emergency; and that the stipulation as to the use of water had no reference to the running of the rest of the machine when the steam pump was not in use.

Where the construction of a contract is in doubt, evidence is competent which gives a fuller description of the subject matter to which the contract relates, and so aids in the application and construction of the contract by putting the court in the position of the parties at the time the contract was made.

CONTRACT, to recover for two hydraulic passenger elevators, with pumps, tanks, and piping and steam heating apparatus erected by the plaintiff in two apartment houses of the defendant in Boston.

Trial in the Superior Court, before *Hopkins,* J., who directed a verdict for the defendant; and the plaintiff alleged exceptions. The facts appear in the opinion.

*J. H. Benton, Jr.,* for the plaintiff.

*L. M. Child,* for the defendant.

KNOWLTON, J. The decision of this case turns on the construction of the contract declared on. The defendant contends that the plaintiff was to furnish two elevators, each of which could lift a load of twelve hundred pounds, and would ascend at the rate of two hundred feet per minute with average loads, whether run by steam power or by a supply of water under pressure from the street mains. The plaintiff contends that this stipulation as to the power and speed of the elevators applies only when they are run by the steam engine and pump, which were put in for the purpose of furnishing power.

At first glance, the contract seems to give such prominence to the hydraulic features of the system as to create an impression that these were elevators designed to be run as much by water taken from the street mains as by steam. But a careful examination of the contract and specifications shows that they were not.

The hydraulic power ordinarily used is furnished by a steam engine operating a steam pump. The agreement describes the articles to be furnished as " two passenger elevators, each operated by one of our hydraulic hoisting machines upon a central

pressure tank system." It is said that " this machine " will lift the load and ascend at the speed specified. " To operate the two foregoing passenger elevators," the plaintiff says it will furnish and set up " the pump, tanks, and hydraulic piping comprising our pressure tank system as follows." Then follow specifications for a steam pump, among other things, and for its connections with the boiler so that it shall be ready for use. As a part of the same contract, the plaintiff agreed to construct a boiler, with all its appointments, so as to make the apparatus complete for running the pump, as well as for heating the building by steam.

It is obvious that " the machine " whose capacity is stated in the contract is the hydraulic hoisting machine, which includes the pump by which the power is furnished, and the stipulation as to the capacity of each of the elevators has reference to the machine as a whole, when run by the power to whose use it is adapted, and not to a part of the machine to which a different kind of power may be applied in an emergency, or under peculiar circumstances.

The only reference to the use of water from the street main for power is in an agreement to connect the water pipe with the pressure tank after the defendant brings it into the building. It is said in the contract that " this is for use when boiler or pump is out of order, or where the expense of running the boiler and pump would be greater than the expense of the city water"; and in this statement there is an implication that ordinarily the latter expense is the greater, and that the arrangement for using water from the street main is no part of the machine proper, but simply an additional provision for exceptional occasions.

We are of opinion, therefore, that the stipulation referred to has no reference to the running of the rest of the machine when the steam pump is not in use, and that the ruling of the court on this part of the case was erroneous.

If the construction of the contract were doubtful in this particular, it would be competent to show, as the plaintiff offered to do, that tanks, pumps, piping, and other appliances different in character and construction from those called for by the contract " would be necessary in a machine which could lift a load of twelve hundred pounds at a speed of two hundred feet per

minute with average loads " when run by water power from the street mains.  This would not be evidence to enlarge, explain, or contradict a written contract, but it would be giving a fuller description of the subject matter to which the contract relates, and so would aid in the application and construction of the contract by putting the court in the position of the parties at the time the contract was made.  It appeared at the trial that the machine was of ample capacity when used with the steam power that belonged to it, and, on the question whether the contract as to capacity was applicable to a part of the machine run by a different kind of power, differently applied, evidence that the two kinds of power were so different in their mode of operation as to call for different kinds of machinery and appliances was competent.                    *Exceptions sustained.*