GEORGE F. WILLETT *vs.* S. ELIZA W. SMITH & another, administrators.

Suffolk. March 26, 1913. — May 22, 1913.

Present: RUGG, C. J., MORTON, LORING, SHELDON, & DE COURCY, JJ.

*Contract,* Construction, Validity, Performance and breach. *Frauds, Statute of.*

At the trial of an action against the administrator of an estate for the breach of a contract for the sale to the defendant's intestate of the capital stock of a manufacturing corporation, where it appears that a memorandum was signed by the parties in which the sale was described as one of "stock," but from which alone it is impossible to determine with certainty whether capital stock or a stock of merchandise was referred to, oral evidence is admissible for the purpose of fixing the subject matter of the contract and of showing what meaning the parties put upon their words; and if, in the light of such evidence, the contract appears certain in its terms, the statute of frauds is satisfied.

The statement as to the selling price in a memorandum of a contract for the sale of the capital stock of a corporation is sufficiently definite to make the contract enforceable and to satisfy the statute of frauds, if, although the price is not stated in terms, a definite method of computation by the use of existing and definite data is stated. The mere fact that a dispute may arise between the parties as to some of the data does not make the contract unenforceable if the data intended to be referred to in the contract can be determined by a court.

In a memorandum as to a contract for the sale of the capital stock of a corporation, the price to be paid was not stated in terms but a definite method of computation was agreed upon, and there was a stipulation as to a reference to arbitration of disputes which might arise as to the contract. The purchaser died and the administrator of his estate repudiated the contract. The seller thereupon, without a computation of the price, a formal transfer of the stock or a demand of the price having been made, brought an action upon the contract against the administrator. *Held,* that the administrator because of his repudiation of the contract could not rely in defense on the lack of a computation of the price, a transfer of the stock and a demand for the price, nor upon the stipulation in the contract as to settlement by arbitration.

CONTRACT upon an agreement by the defendants' intestate, William F. Whittemore, to purchase the capital stock of the Walpole Card Clothing Company on terms set out in a memorandum described below. Writ dated April 30, 1907.

In the Superior Court the case was heard by *Lawton, J.*

The memorandum relied on by the plaintiff contained, under the heading, "Balance Sheet, Mar. 1, 1905," a tabulated statement

in the nature of a trial balance. On the debit side were items of machinery and fixtures, plant supplies, construction, cash, travelling expenses, pay roll, discount, merchandise, expense and accounts receivable. On the credit sides were items of capital, "George F. Willett," reserve fund, profit and loss, and accounts payable. Under the tabulated statement was the following:

"Values of the accounts 'Machinery & Fixtures,' 'Plant Supplies' 'Construction' to be determined as follows: Machinery as per memorandum A, B, C, at present value: new less twenty percent (20%) discount. Shafting and belting at present cost less fifty percent (50%) discount. Office fixtures, boxes, and miscellaneous at value. Price of card machinery to be based on price paid 'Smith.' Value of the accounts 'Trav. Expenses' 'Pay Roll' 'Discount' 'Mdse.' 'Expense' to be determined by inventory taken as follows: Finished goods at selling price less twenty-five percent (25%). Raw Material and stock in process at cost. Seconds at selling price less fifty percent (50%).

"Accounts Receivable to be collected by the Walpole Card Clothing Co., and guaranteed by G. F. Willett.

"Any points of dispute relative to the above to be determined by arbitrators, — one to represent the buyer, one to represent the seller, and a third to be appointed by them.

"Transfer of business to be on April 29, 05.

"Settlement to be made in cash — June 1, 05 for the value of stock as determined above and account due G. F. Willett.

"Memo. of sale of stock of W. C. C. April 30, 05.

"George F. Willett

"W. F. Whittemore"

Annexed to the foregoing were sheets labelled "A," "B" and "C," containing detailed lists of machinery of various classes with their values.

The plaintiff testified that he had but one interview with the defendants' intestate, and that such interview was at about the middle of April, 1905. At that interview the defendants' intestate said that he was willing to buy the business conducted by the Walpole Card Clothing Company and would prefer to keep the organization as it stood and to buy the stock of the company. The parties went over in detail the balance sheet of the company,

a copy of which formed a part of the memorandum above described, and they agreed to determine the price of the stock by a reinventory, a reassessment or readjustment and reappraisal of the assets shown on the balance sheet.

It further was agreed, in this conversation, that the accounts receivable should be collected by the company and should be guaranteed by the plaintiff at their face value, and that any points of dispute relating to the agreement should be determined by arbitrators, one to represent the buyer, one to represent the seller, and a third to be appointed by them.

A draft of the memorandum then was drawn up by a stenographer, some changes were made by the parties, and it was signed.

It appeared that the Walpole Card Clothing Company was capitalized at $15,000, with its capital stock divided into one hundred and fifty shares, of which the plaintiff owned eighty-five shares, one Samuel E. Bentley fifty shares, and one Nathan O. Gay fifteen shares. The plaintiff testified without contradiction that he was authorized by Bentley and Gay to sell their shares of stock and that he had agreed with them to take their stock at par.

The defendants' intestate was taken sick with pneumonia on May 8 and died on May 15, 1905. The defendants repudiated the agreement and refused to be bound by it.

At the close of the evidence the judge found for the plaintiff and ordered the case referred to an assessor to assess the damages, "the parties having agreed that this might be done in case the judge should be of the opinion that there was a contract between the plaintiff and the defendants' intestate;" and, being of the opinion that the correctness of such interlocutory finding and order ought to be determined by this court before any further proceeding in the Superior Court, the judge by agreement of the parties reported the case for determination by this court. If the finding and order were warranted by the admissible evidence they were to stand; otherwise, judgment was to be entered for the defendant.

*H. O. Smith,* for the defendants.

*H. L. Sampson,* for the plaintiff.

SHELDON, J. It has been contended that the agreement sued on is too indefinite and uncertain to afford ground for an action.

The memorandum of the agreement, besides other things, contains a schedule of the assets and liabilities of the Walpole Card Clothing Company, the chief item of the latter being an indebtedness to the plaintiff; provides for the determination of the value of the assets; fixes a date for the transfer of the business, and a later date for the settlement in cash "for the value of stock as determined above and account due" to the plaintiff; and it concludes with the words "Memo. of sale of stock of W. C. C." Standing merely by themselves, it would be difficult to construe these provisions. But the situation of the parties to an agreement and the circumstances under which they made it, so far as these were present to their minds, may be proved by parol evidence, for the purpose of fixing the subject matter of the agreement and showing the meaning which they put upon their words. This often has been declared, both at common law and in cases arising under the statute of frauds. *Knight* v. *New England Worsted Co.* 2 Cush. 271, 283. *Mead* v. *Parker,* 115 Mass. 413. *Adams* v. *Morgan,* 150 Mass. 143, 146. *Whittier Machine Co.* v. *Graffam,* 156 Mass. 415, 417. *Baker* v. *Hall,* 158 Mass. 361. *Bassett* v. *Rogers,* 162 Mass. 47, 51. *Lee* v. *Butler,* 167 Mass. 426, 428. *New England Dressed Meat & Wool Co.* v. *Standard Worsted Co.* 165 Mass. 328, 332. *Smith* v. *Vose & Sons Piano Co.* 194 Mass. 193. *Jennings* v. *Puffer,* 203 Mass. 534, 538. Upon such evidence it appears that the plaintiff owned a large part of the shares of the capital stock of the Walpole Card Clothing Company, and was authorized by their owners to sell the other shares thereof. There was no evidence that he had any right to sell the stock in trade, machinery or other assets of the corporation. This fact, with the rest of the evidence, all of which was competent for the purpose that has been stated, makes it plain that the subject matter of the agreement was the capital stock of the corporation; that this was what was to be sold by the plaintiff and bought by the defendants' intestate.

This manifestly was intended to be a valid and complete agreement when signed. Nothing remained to be done but to transfer the stock, compute the price, and make a payment in cash; and the time for these things was fixed.

The price was not stated in terms, but was left to be computed by ascertaining the value of the different items of the assets and

adding the amount of the indebtedness to the plaintiff. But the method of computation was stated. It was not left to the subsequent agreement of the parties. It was like the sale of property for its value or some stated proportion thereof. This sufficiently fixes the price, on the often quoted principle, *id certum est quod certum reddi potest.* Agreements for sales at prices to be so fixed were sustained in *Lent* v. *Hodgman,* 15 Barb. 274; *McConnell* v. *Hughes,* 29 Wis. 537; *Sergeant* v. *Dwyer,* 44 Minn. 309; and *McBride* v. *Silverthorne,* 11 U. C. (Q. B.) 545. All these cases are directly in point. The language of this court in *Brown* v. *Bellows,* 4 Pick. 178, 189, is to the same effect. And see the cases collected in 35 Cyc. 48, and in 24 Am. & Eng. Encyc. of Law, (2d ed.) 1036.

It is true that in such cases disputes may arise between the parties as to the amount of the price to be so fixed; but the courts afford a ready means of settling such disputes, as was pointed out in some of the cases referred to. In the case at bar, it was provided that any points of dispute should be settled by arbitration. If this stipulation was invalid, the parties were merely left to their legal remedies; if it was valid, there would be no difficulty in enforcing it. In either case, the defendants having repudiated the whole agreement, it affords no defense to the present action. *Lamson Consolidated Store Service Co.* v. *Prudential Fire Ins. Co.* 171 Mass. 433.

For the same reason, because the defendants have wholly refused to carry out the agreement, the action can be maintained without an actual computation of the price, a formal offer to transfer the shares of stock, and a demand of the price. *Scanlan* v. *Geddes,* 112 Mass. 15, 17. *Griggs* v. *Moors,* 168 Mass. 354. *Foternick* v. *Watson,* 184 Mass. 187.

There was a sufficient memorandum of the agreement to satisfy the requirements of the statute of frauds. R. L. c. 74, § 5. This necessarily follows from what has been said.

The finding and order of the Superior Court must stand.

*So ordered.*