[Civ. No. 26970. Second Dist., Div. Three. May 15, 1963.]

JOHN B. BERTERO, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; NATIONAL GENERAL CORPORATION et al., Real Parties in Interest.

Bodkin, Breslin & Luddy and Henry G. Bodkin, Jr., for Petitioner.

No appearance for Respondent.

Hindin, Sterling, McKittrick & Powsner and Robert H. Powsner for Real Parties in Interest.

FILES, J.—Petitioner is the plaintiff in a civil action which he began in the superior court to enforce a written contract of employment against his employers, National General Corporation (formerly named National Theatres and Television, Inc.) and its subsidiary, Fox West Coast Theatres Corporation, who will be referred to collectively as "National." The latter made a motion in the superior court for an order compelling arbitration. After a hearing the court made an order under Code of Civil Procedure, sections 1281.2 and 1281.4, that petitioner and National proceed to arbitrate, and that the civil action be stayed until arbitration is had. Petitioner now asks this court to issue an appropriate writ to compel the superior court to vacate its orders and go forward with the civil action.

The matter has been heard on an order to show cause issued by this court. National has filed a return which admits the substance of the factual allegations of the petition, though denying certain averments which embrace legal conclusions.

The facts will be stated here as they appear from the petition and the appendix, containing copies of the superior court documents.

Petitioner was first employed in 1930 by the business organization which is now operated by National. After continuous service as attorney, officer, and director, he became president of National on October 1, 1958, in which capacity he served until December 1, 1959. On September 17, 1958, petitioner and National entered into a written agreement whereby petitioner was employed to perform executive services for a term of five years, commencing October 1, 1958, at a stated salary, plus certain other benefits. This contract further provided that petitioner would be employed for an additional five-year period as a part-time consultant at a lower rate of compensation.

On November 12, 1959, the parties entered into a written modification of the 1958 contract. This 1959 agreement provides that commencing December 1, 1959, for a term of five years petitioner shall serve as a part-time executive for a specified salary and other stated benefits. The conditions of this part-time employment are described in some detail. This 1959 agreement also provides for an additional five-year term as a consultant, to follow the five years as a part-time executive. Both the 1958 contract and the 1959 modification contain the following language:

"If any dispute or disagreement shall arise between the parties hereto and the parties hereto shall fail or be unable to agree promptly upon a settlement thereof, such dispute or disagreement shall be submitted to arbitration in Los Angeles, California, in accordance with the Rules of the American Arbitration Association then obtaining, and judgment upon the award rendered may be entered in any court having jurisdiction thereof."

To and including March 23, 1962, National regularly paid to petitioner his weekly salary as specified in these agreements. On March 29, 1962, National sent to petitioner a letter over the signature of its new president, which stated as follows:

"Dear Mr. Bertero:

"The agreement dated November 12, 1959, between yourself and National Theatres & Television, Inc. has at my request recently come under close scrutiny and review. The considered conclusion is that it represents a serious detriment to and drain upon the company and that the interests of the company and its shareholders require its immediate termination.

"The circumstances under which it was entered into render it invalid and unenforceable. Moreover, it can only be construed as an agreement to pay you for such services as you may be called upon to perform. To construe it otherwise would compound its invalidity.

"The company, reviewing its business and operations and the absence of any participation therein or services performed by you for the company since November 1959, has determined that there is no need for your services either at the rate set forth in the purported agreement or at all. Moreover, the company has determined that in any event the agreement is invalid, unenforceable and an imposition upon the company and its shareholders.

"Accordingly, you are hereby given notice that the company shall not call upon you to perform any services for it or on its behalf, and that, therefore, you shall be entitled to no further compensation thereunder. You are further notified hereby that in any event the company hereby terminates and cancels such agreement."

There was some further correspondence between the parties, and on June 8, 1962, petitioner filed in the superior court an action against National for accrued salary and for declaratory relief. National appeared, obtained an ex parte order extending its time to plead, and then on June 22 filed a motion for an order to compel arbitration. On August 14, 1962, National filed with the American Arbitration Association a "Demand for Arbitration." This demand stated that National was a party to a written contract dated November 12, 1959, containing an arbitration clause, which clause was quoted verbatim. The demand described the "claim or relief sought" in the following language:

"1. Determination that the employment agreement between John B. Bertero and National Theatres & Television, Inc. (now National General Corporation), dated November 12, 1959, is invalid and unenforceable, and/or terminable and cancelable by said National General Corporation (and was terminated on March 29, 1962).

"2. Recovery of all compensation paid to John B. Bertero under said contract since the date thereof, to wit, November 12, 1959, in a total amount to be determined."

National's motion was heard and submitted on October 10, 1962. The ruling of the court was reflected in a minute order of October 16, 1962, as follows:

"Motion of defendants for an order that arbitration proceed, heretofore submitted on October 10, 1962; The Court makes the following findings of fact and conclusions of law in relation thereto:

"1. An agreement to arbitrate the controversy exists.

"2. Plaintiff refuses to arbitrate pursuant thereto.

"3. Any and all issues of controversy between the parties relating to, or growing out of, the contract between them, including the validity of the contract itself, are arbitrable under the provisions of the arbitration agreement.

"4. Defendants have not repudiated the arbitration agreement.

"5. Defendants have not waived their right to enforce arbitration herein, nor are they in default in proceeding with such arbitration.

"6. Defendants are not guilty of laches.

"7. Defendants do not come into this Court with unclean hands.

"It is therefore ordered that plaintiff-respondent and defendants-petitioners proceed to arbitrate all controversy between them relating to that certain contract between them dated November 12, 1959. It is further ordered that the within action is stayed until said arbitration is had."

On motion of petitioner, there was a rehearing on November 20, after which the court adhered to its earlier ruling.

The statute under which the superior court was required to act is Code of Civil Procedure, section 1281.2, which provides:

"On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that:

"(a) The right to compel arbitration has been waived by the petitioner; or

"(b) Grounds exist for the revocation of the agreement.

"If the court determines that a written agreement to arbitrate a controversy exists, an order to arbitrate such controversy may not be refused on the ground that the petitioner's contentions lack substantive merit. . . ."

■ Preliminarily, we observe that National's notice of motion to compel arbitration does not allege the existence of any written agreement. Thus the motion fails to state facts which the statute requires as basis for the order sought. The notice of motion declares that "a dispute exists between the parties to the aforesaid contracts," referring to the contracts which are attached to Bertero's complaint. The distinction is not without substance, in view of what National said in its March 29 letter. As Bertero's complaint for declaratory relief alleges, a dispute exists because Bertero contends that the contracts are valid and existing while National contends that the contracts are invalid, unenforceable, terminated and canceled.

In this court, however, National has taken the position that the 1959 contract has enough existence to sustain the validity of the arbitration clause which it now wishes to enforce. Doubtless if the present order were vacated, National would ask leave to amend its notice of motion to allege that much. It is therefore necessary to consider other matters.

It was Bertero's contention before the superior court, and here, that when National sent the letter of March 29, 1962, it repudiated its entire agreement, including the arbitration clause; that such repudiation amounted to a waiver of its right to demand arbitration; and thus Bertero became free to enforce his contract in the courts. ■ The doctrine of waiver by repudiation is explained by Professor Corbin in the following language:

"Next, consider the effect of the repudiation or other breach by one party, its effect on the right of the other party and its effect on the right of the repudiator himself. Although one party can not by himself 'rescind' a contract, he can wrongfully 'repudiate' it. What is the effect of his repudiation? To answer this, we must first interpret his expressions and determine the coverage of the repudiation. Suppose first that he repudiates the agreement to arbitrate itself. By such a repudiation he does not deprive the other party of his right to arbitration; and if the repudiator brings an action in breach of his valid arbitration agreement the defendant can defend on the ground that arbitration is a condition precedent, or under a statute can obtain a stay or an order to arbi-

trate, or can counterclaim for damages. But such a repudiator has himself no right to arbitration. The other party can now bring his action in reliance on the repudiation, or otherwise change his position in reliance. Thereafter, the repudiator has no power of retraction and can not insist on the remedy by arbitration. If the alleged repudiator denies the existence or the scope of his alleged 'repudiation,' in the suit brought against him, and asks for a stay of the action and an order to arbitrate, the issue so raised would be for the courts to determine.'' (6A Corbin on Contracts, pp. 434, 435.)

A repudiation of the entire contract was held to be a waiver of the right to arbitrate, so that the arbitration clause could no longer be raised as a defense to an action in court, in *Anderson* v. *M. Burg & Sons,* 170 Minn. 53 [212 N.W. 9] ; *Willett* v. *Smith,* 214 Mass. 494 [101 N.E. 1058] ; and *Berry* v. *Carter,* 19 Kan. 135, 139.

The language quoted from the Corbin treatise is substantially the same as the language used in an earlier edition which was quoted with approval in *Local 659 I.A.T.S.E.* v. *Color Corp. of America,* 47 Cal.2d 189, 195-196 [302 P.2d 294]. In that case Local 659 expressly refused to arbitrate when the controversy first arose. Because of its conduct it lost the right to compel arbitration at a later date.

Prior to the adoption of the 1961 arbitration statute the doctrine of waiver had been established by case law. (See 3 California Law Revision Commission, Reports, Recommendations and Studies, p. G 36.) The commission recommended that these holdings be codified (*id.,* at p. G 7), and for that purpose submitted to the Legislature the text of Code of Civil Procedure, section 1281.2, which was enacted in 1961.

None of the California cases involves the combination of circumstances found here: an unqualified assertion by one party that the agreement is invalid; an action brought by the other party for a declaration that the contract is valid; and a subsequent demand by the former for arbitration under the agreement.

It is commonly said that whether a party has waived the benefit of an arbitration clause is a question of fact. (*Grunwald-Marx, Inc.* v. *Los Angeles Joint Board, Amalgamated Clothing Workers,* 192 Cal.App.2d 268, 277 [13 Cal. Rptr. 446].) Here the issue turns entirely upon an interpretation of National's letter of March 29. At the time the superior court ruled it had before it no evidence of National's

intentions except what was contained in the contracts, the letter of March 29, the defective notice of motion, and the demand which had been filed with the American Arbitration Association.

The Supreme Court has said that, "an appellate court is not bound by a trial court's construction of a contract or other written instrument based solely upon the terms of the instrument." (*Trubowitch* v. *Riverbank Canning Co.*, 30 Cal.2d 335, 339 [182 P.2d 182].) No emphasis need be placed upon this rule of appellate review because as we read the March 29 letter, it is not ambiguous in any sense which is pertinent to this decision.

The letter must be read against a background which serves to emphasize the simplicity and clarity of the language used. The contract in question involves a great deal of money, even for a corporation the size of National. The letter was signed by the president of the company, and was addressed to a predecessor in office. The letter opens with the statement that Bertero's employment contract has come under "close scrutiny and review." It states the writer's "considered conclusion." The letter declares that "The circumstances under which it [the 1959 contract] was entered into render it invalid and unenforceable." After discussing the meaning of the contract, the writer repeats, "the company has determined that in any event the agreement is invalid. . . ."

No more precise and emphatic language could have been chosen to notify Bertero that the company was declaring its independence without qualification or reservation.

The closing statement of the letter that "the company hereby terminates and cancels such agreement," by itself could have had less drastic significance. (See *B. L. Metcalf General Contractor, Inc.* v. *Earl Erne, Inc.*, 212 Cal.App.2d 689 [28 Cal.Rptr. 382].) But to say in such a letter that the contract is "invalid and unenforceable" could mean only that it created no rights or duties which either party could stand upon. This letter can only be read as a considered and accurate statement of National's position, which National expected and intended to be taken at its full face value.

National makes the argument in this court that the March 29 letter meant that Bertero's asserted right to benefits under the contract was invalid but National's right to arbitration was not invalid. National points out that the arbitration clause may be valid and enforceable even though National has a good defense against enforcement of any of the other terms

of the agreement. It is a sufficient answer to point out that there is nothing in the letter to qualify it in this manner. When National said "the agreement" was not enforceable, it was saying that the portion relating to arbitration was not enforceable. When National concluded that it would no longer pay Bertero his salary, National was free to demand arbitration if it then believed that the written agreement to arbitrate had any force or effect. Instead, it wrote the letter of repudiation. Bertero was entitled to consider it a true statement of National's position, and to rely upon it in commencing his own action to enforce the contract.

*Tas-T-Nut Co.* v. *Continental Nut Co.*, 125 Cal.App.2d 351 [270 P.2d 43], presents a fact situation which is different. There plaintiff suggested arbitration and defendant resorted to dilatory tactics which were assumed to imply repudiation. Later, but before suit was filed, defendant changed its position and requested arbitration. The holding is that the defendant's implied repudiation of its right to arbitrate was effectively withdrawn before the other party began its civil action.

We are not here concerned with any question involving the repudiation or violation of any of the terms of the contract other than the arbitration clause. For the purpose of this decision it may be assumed (since we need not decide) that National might have, without waiving arbitration, repudiated or otherwise breached every other obligation contained in the agreement. The 1961 statute (Code Civ. Proc., § 1281.2) expressly provides that if an agreement to arbitrate exists, an order to arbitrate will not be refused on the ground that the petitioner's contentions lack substantive merit. The rationale of the rule, as it evolved through case law, is discussed in *Posner* v. *Grunwald-Marx, Inc.*, 56 Cal.2d 169 [14 Cal.Rptr. 297, 363 P.2d 313]. Thus it is not because National has repudiated its promise to pay Bertero's salary, but because it has repudiated its promise to arbitrate, that Bertero was justified in resorting to the courts.

It is well settled that where the right to arbitrate has been in fact waived, the contract in all other respects may then be enforced in the courts. (*Jones* v. *Pollock*, 34 Cal.2d 863, 867 [215 P.2d 733] ; *Case* v. *Kadota Fig Assn.*, 35 Cal.2d 596 [220 P.2d 912] ; *Grunwald-Marx, Inc.* v. *Los Angeles Joint Board, Amalgamated Clothing Workers*, 192 Cal.App.2d 268 [13 Cal.Rptr. 446].) The record before the superior court established as a matter of law that National had waived the right to compel arbitration and that Bertero had

commenced his action in reliance upon that waiver. It was therefore an abuse of discretion for the superior court to stay the action and order the parties to arbitrate.

The order compelling arbitration and staying the civil action is not appealable. Such an order is not mentioned in Code of Civil Procedure, section 1294, which lists the orders in arbitration proceedings from which appeals may be taken. Under the former statute such an order was not appealable (*Corbett* v. *Petroleum Maintenance Co.*, 119 Cal. App.2d 21 [258 P.2d 1077]) and the 1961 arbitration statute was designed to codify this rule (see 3 California Law Revision Commission, Reports, Recommendations and Studies, p. G 11).

If the parties should now proceed to arbitrate, an appeal from the order or judgment made vacating or confirming the award would not be an adequate remedy. The parties would be put to the unnecessary delay and expense of an arbitration, further court proceedings, and an appeal, after which they would be required to start over. Mandamus is available to correct such an abuse of discretion. (Cf. *Coy* v. *Superior Court*, 58 Cal.2d 210, 215 [23 Cal.Rptr. 393, 373 P.2d 457].)

Let a peremptory writ of mandamus issue requiring the respondent superior court to set aside its orders of October 16 and November 20, 1962, and to exercise its jurisdiction to hear and decide the pending civil action in the ordinary course of its business.

Shinn, P. J., and Ford, J., concurred.

The petition of the real parties in interest for a hearing by the Supreme Court was denied July 10, 1963.