(675 P.2d 912)
No. 55,042

CITY OF WAMEGO, KANSAS, *Appellee,* v. L. R. FOY CONSTRUCTION CO., INC., and FIDELITY AND DEPOSIT COMPANY OF MARYLAND, *Appellants.*

Opinion filed January 12, 1984.

*William L. Mitchell,* of Mitchell & Henry, and *Kent G. Voth,* of Schmidt & Langley, Chartered, of Hutchinson, for appellants.

*Edward W. Pugh,* of Wamego, for appellee.

Before FOTH, C.J., SPENCER and PARKS, JJ.

PARKS, J.: This action for breach of a construction contract was filed by the City of Wamego against defendants L. R. Foy Construction Company and its bonding company. Defendants sought to submit the dispute to arbitration as permitted by the terms of the contract by filing a motion to stay the civil suit and compel arbitration pursuant to K.S.A. 5-402. This motion was denied by the court and defendants appeal that order. K.S.A. 5-418(*a*)(1).

In the spring of 1981, plaintiff invited bids for the construction of certain sanitary sewer improvements. Defendant Foy was the apparent low bidder with a bid of $224,971 while Walters Construction Company was the second lowest bidder with a bid of

$238,138. On April 21, 1981, the bids were opened. The City conditionally accepted Foy's bid and awarded the contract for construction to Foy subject to approval of the project by the Environmental Protection Agency (EPA). Foy was notified of this action by the City and it returned the executed contract documents to the City on May 6. The bid form which became a part of the contract documents included the following terms:

a)   no bidder may withdraw the bid for a period of sixty (60) days after opening of the bids.
b)   written notice of award, which may be by telegraph, must be given the bidder (Foy) by the City within sixty (60) days after date of opening the bids.
c)   construction shall commence thirty (30) calendar days following notice to proceed.
d)   construction shall be completed three hundred (300) calendar days following notice to proceed.

The City submitted all of the necessary information to the EPA but became concerned that federal approval would not be received in time to give Foy final written acceptance of its bid within the 60 days required by the bid form. The City contacted the three low bidders advising them of the potential time problems and requesting a 60-day extension within which to formally award the contract. Foy responded that it would honor the contract for an additional 90 days on the condition that the contract bid price be increased by 5 ¾% due to the expected increases in costs for labor and materials. The City made no response to this proposal. On June 19, the City received notice that the EPA had approved the project. A telegram formally accepting Foy's bid was immediately dispatched and a mailgram confirming the contents of the telegram was also sent. The telegram was received in Foy's office between 4:45 p.m. and 5:00 p.m. on June 19, 1981—fifty-nine days after the bids were opened.

At a preconstruction conference on June 29, 1981, the city engineer gave Foy oral notice to proceed with the project effective June 30 and distributed executed contract documents. Dennis Lyne, general superintendent of Foy, refused to receive Foy's three copies of the contract and accompanying documents stating, in substance, that Foy had not received notice of acceptance until the 62d day after opening of the bids and that there

was no contract in effect. The City contended that it had mailed conditional notice of acceptance of its bid on the 6th day and final unconditional acceptance had been received by Foy on the 59th day. It refused to recognize Foy's demand for a 5 ¾% increase as having any effect and argued that any claim for extra compensation would have to be submitted in writing with full justification for approval by both the EPA and the City. The City demanded performance in a letter stating that construction shall commence within 30 calendar days (by July 30, 1981) and shall be completed within 300 calendar days (by April 26, 1982).

Foy's attorney responded with a letter to the city engineer which stated in part as follows:

"L. R. Foy Construction Co., Inc. still wants to do this job but finds it necessary to have a solid agreement as to the 5 ¾% increase and to have a sound footing as far as interpretation of all contract documents. We are hopeful that you can respond within seven days. After that time, the bonding company of L. R. Foy Construction will be asked to withdraw all bid bonds and the L. R. Foy Construction Co., Inc. will withdraw from all negotiations of the intended project." (Letter of July 7, 1981.)

Subsequent correspondence from Foy's legal counsel included two letters including the following language:

"On behalf of the L. R. Foy Construction Co., Inc., this office hereby gives notice that said L. R. Foy Construction Co., Inc., withdraws from all negotiations concerning the contract for the construction of the above referenced project. As a result thereof, said L. R. Foy Construction Co., Inc., respectfully requests that the bid bond executed and forwarded to the City of Wamego, Kansas, be returned to this office at the earliest practical opportunity." (Letter of July 17, 1981.)

"I am in receipt of your letter dated July 21, 1981. Please understand that the L. R. Foy Construction Co., Inc. submitted a bid for the award of the contract for the above reference project, *however*, the contract documents were not forwarded to said Construction Company within 90 days. Due to that fact expected raises in material and labor accrued causing a 5 ¾% increase in the total contract price. The city denied Foy's request to increase the contract by 5 ¾% to accommodate this problem, and in return, Foy withdrew from the contract negotiations. Foy cannot be expected to begin performance of the contract on the above project without ample time to plan and purchase the necessary construction equipment. "Because of the fact that a delay on your part in turn delayed the forwarding of the contract to Foy, Foy feels fully justified in its withdrawal. In addition to the return of the bid bond we respectfully ask for the return of the performance and the labor and material payment bond executed on the engineers' form no. 7815-2, CS-1, and CS-2." (Letter of July 22, 1982.)

The City continued to demand performance by Foy according

to the terms of the contract and did not negotiate any proposed price changes.

A meeting between representatives of Foy and the City took place on August 18, at which time Foy took the position that unless the City agreed to an additional $4.50 to $5.00 per foot compensation or an unlimited time extension for the project's completion, there was no contract. The City turned to the next lowest bidder and inquired whether its bid was still firm. Walters Construction agreed to perform the job for the amount of its original bid and entered into a contract with the City. The City filed this suit for breach of contract seeking damages amounting to the difference between the Foy and Walters bids.

Foy filed its motion to compel arbitration premised on the following clause included within the contract documents:

"29. *ARBITRATION:*

29.1 *General:* In the event of irreconciliable [*sic*] disputes under this contract such disputes may be submitted to arbitration upon the written demand of either party, prior to the acceptance of final payment. The Contractor shall not cause a delay of the work because of the pendency of arbitration proceedings, except with the written permission of the Owner, and then only until the arbitrators shall have an opportunity to determine whether or not the work shall continue until they decide the matters in dispute. The demand for arbitration shall be delivered in writing to the adverse party by registered mail and a copy shall be filed with the Engineer."

Arbitration agreements are statutorily recognized as contracts subject to enforcement in our courts in the same manner as any other contract. K.S.A. 5-401. A party to a contract including an arbitration clause may seek an order compelling arbitration upon proof of the clause and the opposing party's refusal to arbitrate. K.S.A. 5-402. The court "shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised." K.S.A. 5-402(*a*). Thus, whenever a motion to compel arbitration comes on for hearing, the threshold determination to be made by the court is whether an agreement to arbitrate exists and whether this agreement includes arbitration of the specific point at issue. See *Weeks v. Crow,* 113 Cal. App. 3d 350, 169 Cal. Rptr. 830 (1980).

Plaintiff conceded that its written contract with Foy included an arbitration clause but argues that defendants waived the right to compel arbitration under this clause by denying the existence of the contract. Defendants contend that none of Foy's words or

actions could be construed as a repudiation of the arbitration agreement even if the binding force of the construction contract was at issue and that so long as this agreement was not revoked, arbitration must be compelled.

The district court held that at all times material to this case, defendant Foy denied the existence of any binding contract. Thus, the court refused to order arbitration concluding that the agreement to arbitrate did not extend to a dispute over the existence of the contract itself and that defendant's anticipatory repudiation of any contractual obligation effectively waived his right to assert the arbitration clause. The court went on to consider the merits of the controversy and held that a binding contract was completed between the parties and that defendant Foy performed no work under the contract. All further action on plaintiff's petition was stayed pursuant to K.S.A. 5-418 until decision of this appeal.

Authorities have long rejected the notion that a defendant may compel arbitration of the issue of a contract's existence when the contract containing the arbitration clause has been repudiated. This point was made quite clear in the following quotation from an English case cited by Williston:

"An arbitration clause is a written submission, agreed to by the parties to the contract, and, like other written submissions to arbitration, must be construed according to its language and in the light of the circumstances in which it is made. If the dispute is whether the contract which contains the clause has ever been entered into at all, that issue cannot go to arbitration under the clause, for the party who denies that he has ever entered into the contract is thereby denying that he has ever joined in the submission." *Heyman v. Darwins,* [1942] A.C. 356 as cited in 16 Williston on Contracts § 1920, p. 188 (3d ed. 1976).

In addition, there is authority for the argument that repudiation of the existence of a contract containing an arbitration clause may factually operate as a waiver of the right to compel arbitration on any point. *Bertero v. Superior Court,* 216 Cal. App. 2d 213, 30 Cal. Rptr. 719 (1963).

Waiver in contract law implies that a party has voluntarily and intentionally renounced or given up a known right, or has caused or done some positive act or positive inaction which is inconsistent with the contractual right. *United American State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc.,* 221 Kan. 523, 526, 561 P.2d 792 (1977). Waiver is consensual in nature but the intention may be inferred from conduct, and the knowledge may

be actual or constructive. *Stratmann v. Stratmann,* 6 Kan. App. 2d 403, 410-11, 628 P.2d 1080 (1981). Once it has been established that a right has been waived, the party possessing the contractual right is precluded from asserting it in a court of law. *United American,* 221 Kan. at 526-27.

Foy contends that it never repudiated the arbitration agreement and that this clause should be viewed as independently enforceable. However, the severability of an arbitration clause depends upon the intent of the parties and such a clause is not severable when the existence of a contract from which it is to be severed is in dispute. *Pollux Marine Agencies v. Louis Dreyfus Corp.,* 455 F. Supp. 211, 219 (S.D. N.Y. 1978). In addition, unless there is evidence of an independent meeting of the minds on the issue of arbitration alone, the arbitration agreement cannot stand as a separate contract. *Pollux Marine Agencies,* 455 F. Supp. at 220. Therefore, conduct relating to the main contract may bear on rights granted by the arbitration clause included within that contract.

Foy also argues that the language of K.S.A. 5-401 confines the inquiry of the court to whether the arbitration clause has been revoked. However, this provision is simply intended to reverse historical prejudices against arbitration and recognize the arbitration agreement as a contract subject to be enforced in our courts in the same manner as any other contract. K.S.A. 5-401 invests an arbitration agreement with no greater inviolability than that enjoyed by any other contract.

In *Bertero,* 216 Cal. App. 2d at 220, the California court considered a very similar factual situation. Plaintiff was a former employee of defendant who filed suit for breach of contract when defendant declared his written employment contract "invalid and unenforceable." The defendant notified plaintiff by letter that it was terminating and canceling the agreement after close scrutiny and review revealed the agreement to be invalid. After suit was filed, defendant sought to compel arbitration pursuant to a clause in the contract. The superior court granted such an order and the court of appeals was asked to overturn the decision by mandamus. On appeal, the court held that although waiver is a question of fact, the letter by defendant could leave no doubt but that the company declared, without qualification, that the contract was invalid. This declaration, it was held, operated as a

waiver of the right to compel arbitration entitling the plaintiff to maintain his action in court. Similar results were obtained in *Anderson v. Twin City Rapid Transit Co.*, 250 Minn. 167, 180, 84 N.W.2d 593 (1957).

In this case, there can similarly be no doubt that defendants denied the existence of any contract. The correspondence sent to the City characterized the relationship with Foy as in negotiation and demanded return of the bid bonds. At the meetings between the parties, Foy's representatives stated their view that no contract had been formed and that unless the City would agree to certain price increases, no contract would ever be completed. Based on this evidence, the district court found that Foy denied the existence of any contract and we conclude that there was substantial competent evidence to support this finding.

In addition, Foy's repudiation of the contract was in no way qualified or limited. Foy made no demand for arbitration until eleven months after formation of the contract when the City had already contracted with another construction firm and filed suit against Foy. In short, both Foy's actions and failure to act were inconsistent with a continued right to compel arbitration. We conclude that the district court correctly held that Foy waived all rights to arbitration.

Affirmed.