**F I L E D**
**United States Court of Appeals
Tenth Circuit**

**JUL 15 1998**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

MALARKY ENTERPRISES, INC.,

      Plaintiff-Appellant,

v.

HEALTHCARE TECHNOLOGY, LTD.,

      Defendant-Appellee.

No. 97-3151
(D.C. No. 96-2254-GTV)
(District of Kansas)

**ORDER AND JUDGMENT**[*]

Before **TACHA,** Circuit Judge, **KELLY,** Circuit Judge, and **McWILLIAMS**, Senior Circuit Judge.

On May 24, 1996, Malarky Enterprises, Inc. ("Malarky"), a Kansas corporation, filed a breach of contract action in the United States District Court for the District of Kansas against Healthcare Technology, Ltd. ("Healthcare"), a foreign corporation with its principal place of business in the United Kingdom, and doing business, *inter alia,* in the United States and the State of Kansas. Jurisdiction was based on 28 U.S.C. § 1332.

As will subsequently be developed, there was, initially at least, some question as to

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3

whether there ever was a contract or agreement between the parties. However, at the present time both parties agree that there was a distributor agreement entered into in the State of Kansas between the parties whereby Healthcare granted Malarky an exclusive distributorship for Canada, the United States, and Mexico of certain exercise equipment manufactured by Healthcare.

In any event, by a First Amended Complaint, filed on June 5, 1996, Malarky alleged that Healthcare on or about February 15, 1996, breached its contract with Malarky by "refusing to ship product to the plaintiff, by refusing to honor purchase orders that had been confirmed by defendant, by contracting directly with plaintiff's customers in Canada, and by refusing to supply reasonable warranty service on their products." Based on its breach of contract claim, Malarky also asserted claims for unjust enrichment and tortious interference.

Attached to the First Amended Complaint was a copy of the agreement between the parties. Paragraphs 15 and 16 of that agreement read as follows:

> APPLICABLE LAW.
> 15. This agreement shall be governed by and construed in accordance with the laws of England.
> ARBITRATION.
> 16. Any dispute, controversy or claim arising out of or relating to this agreement, shall be settled by arbitration in England upon written notice of one to the other in accordance with the Arbitration and Conciliation Rules of the International Chamber of Commerce. Each party shall pay its own expenses in connection with the arbitration.

In response to the First Amended Complaint, Healthcare, on October 4, 1996, filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), alleging therein that "assuming plaintiff's allegation that the parties made a valid contract is true, plaintiff fails to state a claim for which relief can be granted," because, under sections 15 and 16 of their agreement, any dispute arising from the "alleged contract" must be decided through arbitration in England.

In its response, filed on November 27, 1996, to Healthcare's motion to dismiss, Malarky contended that, based on various letters sent by Healthcare's managing director, a Mr. Trevor S. Chatfield, to Malarky and its attorneys, copies of which were attached to the response, Healthcare had repudiated the contract and waived its right to demand arbitration. In this same general connection, Malarky further alleged in its response that on or about September 20, 1996, its counsel and Healthcare's counsel submitted a "Report of Parties' Planning Meeting" to the district court, which report indicated, *inter alia*, that whether there was a contract between the parties was quite possibly in dispute.

More specifically, in its response to Healthcare's motion to dismiss, Malarky attached a copy of a letter, dated February 15, 1996, sent to it by Trevor Chatfield, the managing director of Healthcare, which read, in part, as follows:

> Effective immediately we will not supply you any product. Your orders on this company are cancelled forthwith. I will immediately advise all USA companies that you do not represent Cardiosport in any way whatsoever.

In its response to Healthcare's motion to dismiss, Malarky also attached a copy of

a letter from Trevor Chatfield to Malarky's counsel, dated May 30, 1996, referring to

Malarky's original complaint, in which Chatfield spoke as follows:

> "You refer to a Distributor Agreement as Exhibit "A" but it
> was not attached.
>
> You may not have attached it because there was no
> Distributor Agreement, since after many months of
> continuous objections to the agreement by Mr. Malarky no
> Agreement was signed by both parties."

Also attached to Malarky's response to Healthcare's motion to dismiss, was a

copy of still another letter from Chatfield to Malarky, dated June 18, 1996, in which

Chatfield stated, *inter alia,* "Page 2, Item 4 is incorrect since no Distributor Agreement

was finally signed." In that same letter Chatfield went on to state "the Agreement was

not finalised because of your continued objections which are on file, your fax of 12th Jan.

endorses this position as do the many other fax's not here referenced."

Finally, also attached to Malarky's response to Healthcare's motion to dismiss was

a "Report of the Parties' Planning Meeting," dated September 20, 1996. In that report

appeared, *inter alia,* the following:

*   *   *   *   *

> "Discovery will be needed on the following subjects:
> Whether a contract has been entered into
> between the parties;

*   *   *   *   *

The aforementioned planning report also advised the district court that the case

should be ready for trial by June 1, 1997 and would take approximately one week. The report also provided for pretrial discovery, possible joinder of additional parties, the exchange of witnesses' names, settlement possibilities, and the like. No mention was made of the arbitration clause set forth above.

In a reply, filed on January 23, 1997, to Malarky's response, Healthcare conceded that its former managing director had written certain letters, copies of which had been attached to Malarky's response, but went on to state, for the first time, that "the current management of Defendant now concede that Defendant entered into the Distributor Agreement with Plaintiff."

On April 25, 1997, the district court, after denying a request for oral argument on the motion to dismiss, granted Healthcare's motion to dismiss, noting that Healthcare had by then conceded that there was a distributor agreement between the parties and stating that accordingly any protestations to the contrary by Chatfield in his letters to Malarky and its attorneys were therefore "irrelevant." The district court also held that there was no waiver by Healthcare or its attorneys of the arbitration provision contained in the agreement and that the arbitration provision was valid and enforceable. Accordingly, the district court entered judgment dismissing the action. *Malarky Enter. v. Healthcare Tech., Ltd.,* 962 F.Supp. 1427 (D. Kan. 1997). Malarky appeals the judgment entered.

The parties agree that a court may not grant a motion to dismiss under Fed. R. Civ. P. 12(b)(6) unless it appears that the plaintiff can prove no set of facts that would entitle it

to relief. *Maez v. Mountain States Tel. and Tel., Inc.,* 54 F.3d 1488, 1496 (10th Cir. 1995); *Jacobs, Visconsi & Jacobs Co. v. City of Lawrence,* 927 F.2d 1111, 1115 (10th Cir. 1991). And, further, that, in its consideration of a 12(b)(6) motion to dismiss, a court should construe liberally the pleadings and indulge all favorable inferences in favor of the plaintiff. *Lafoy v. HMO Colorado,* 988 F.2d 97, 98 (10th Cir. 1993); *Williams v. Meese,* 926 F.2d 994, 997 (10th Cir. 1991).

In the instant case, counsel for Healthcare initially indicated there might be some question as to whether there was any agreement whatsoever between the parties. (Of course, if there was no agreement, there would be nothing to arbitrate, and the question of whether there was, or was not, an agreement would be decided in Kansas courts. *See Avedon Eng'g, Inc. v. Seatex,* 126 F.3d 1279, 1286-87 (10th Cir. 1997); *City of Wamego v. L. R. Foy Constr. Co.,* 675 P.2d 912, 915 (Kan. 1984).) Be that as it may, in its reply to Malarky's response to its motion to dismiss, Healthcare specifically conceded, in so many words, that there was a distributor contract between the two parties. So, the parties agree they had a contract, the district court proceeded on that premise, and so do we.

However, even though all now agree there was a distributor contract between Malarky and Healthcare, which contract contained the arbitration clause set forth above, such, of course, does not dispose of the matter. In this regard, it is Malarky's further position, as set forth in its response to Healthcare's 12(b)(6) motion, that Healthcare through its managing director, Chatfield, repudiated the agreement, and thereby waived

the arbitration clause contained therein. In this same regard Malarky also relied on the fact that Healthcare's counsel participated in a Fed. R. Civ. P. 26(f) planning meeting wherein arbitration was apparently never mentioned.

In our view, the record before the district court does not permit the grant of Healthcare's 12(b)(6) motion. It should be emphasized that apparently there had been no discovery before the district court granted the motion to dismiss. At least there are no depositions or affidavits in the record before us. The only so-called "evidentiary matter" in the record before us are the four "attachments" to Malarky's response to Healthcare's motion to dismiss, i.e., copies of the three Chatfield letters and the "Report of the Parties' Planning Meeting." And those four documents certainly do not, in themselves, warrant a dismissal of Malarky's amended complaint for failure to state a claim for relief. For example, Chatfield's letter of February 15, 1996, is arguably a repudiation of any contract between the parties. And his subsequent letters of May 30, 1996, and June 18, 1996, arguably, go a step further than repudiation, by denying outright any contract.

Also, the so-called "planning report" of September 20, 1996, arguably supports Malarky's claim that Heathcare's counsel waived the arbitration provisions in the contract. There was, so far as we can tell from the present record, nothing to indicate that counsel  asserted, at that time, that under the arbitration clause any and all disputes arising out of the contract had to be arbitrated in England. There was simply no mention of arbitration. Rather, counsel in their report to the court spoke of discovery, joinder of

additional parties, exchange of names of witnesses, length of trial and the like, arguably indicating a waiver of the arbitration clause in the contract or agreement. See in this regard *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 39 F.3d 1482, 1490 (10th Cir. 1994); *Peterson v. Shearson/American Express, Inc.,* 849 F.2d 464, 468 (10th Cir. 1988); *D. M. Ward Constr. Co. v. Electric Corp.,* 803 P.2d 593, 598-600 (Kan. Ct. App. 1990).

In short, the present record simply does not support the action taken by the district court. On remand, discovery may well put the case in clearer focus. We are not holding that Malarky has shown repudiation or waiver which might render the arbitration clause inoperative. We are holding, as indicated, that the record does not support dismissal of the action at this time.

Judgment reversed and case remanded for further proceedings consistent with the views herein expressed.

ENTERED FOR THE COURT


Robert H. McWilliams
Senior Circuit Judge