No. 48,101

UNITED AMERICAN STATE BANK AND TRUST COMPANY, *Appellee,* v. WILD WEST CHRYSLER PLYMOUTH, INC., *Appellant.*

(561 P. 2d 792)

Opinion filed March 5, 1977.

*Herbert W. Hopper,* of Hopper, Fuqua & Hopper, of Wichita, argued the cause and was on the brief for the appellant.

*Ken M. Peterson,* of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: This is a suit brought by United American State Bank and Trust Company (hereinafter referred to as United), against Wild West Chrysler Plymouth, Inc. (hereinafter referred to as Wild West), for breach of an express warranty contained within an assignment provision of a security agreement-retail installment note. The trial court, after hearing evidence, found Wild West had breached the warranty and awarded United $4,674.83. Wild West appeals.

The lawsuit arose from a transaction involving the purchase and financing of an automobile. On July 12, 1973, Wild West sold a new Plymouth Road Runner to Kathleen A. Lorg and Ronald

J. Lorg. After trade-in credit and miscellaneous credits and charges, the sale price of the automobile was $5,315.25. In order to finance the car, the Lorgs executed a note and security agreement with Wild West. Wild West then assigned the note to United.

The assignment clause of the note and security agreement contained certain express warranties, including a warranty that "the buyer(s) named is (are) over 21 years of age and has (have) the legal capacity to contract." Breach of the warranty gave United the right to demand Wild West repurchase the note in cash for an amount equal to the entire unpaid balance due on the contract, with accrued interest. At the time the note was executed Wild West knew Ronald Lorg was only seventeen years of age. The trial court found that United did not know he was a minor when it accepted assignment of the note, but in fact thought he was forty-one years old.

The Lorgs made payments on the note totaling $192.06 and then defaulted. On February 28, 1974, United decided to replevin the car and found it had been demolished in an accident. It brought suit against the Lorgs for the unpaid balance. Kathleen Lorg responded by declaring bankruptcy. Counsel for Ronald Lorg notified United that Ronald was a minor and announced his intention to disaffirm the contract pursuant to K. S. A. 38-102.

The testimony disclosed the method of financing the sale of an automobile by Wild West. When Wild West sold an automobile, a customer could either pay cash or finance the purchase. If the automobile was to be financed, a customer could deal directly with a lending institution of his choice or he could borrow the money from Wild West. If the purchase was to be financed by Wild West, the customer would execute a note and security agreement which contained the price and type of vehicle and the terms of repayment of the loan. Thereupon, Wild West would telephone United and attempt to sell the note. In order to do this Wild West was required to give certain information on its customer to an employee of United. United's employee would record the information on a customer statement and call the Wichita Credit Bureau, recording information received therefrom on a second card.

After the two telephone calls were made the bank employee gave the two cards to United's loan officer, Duane Wilson. Based on the information on the cards, he would decide either to accept or reject the note. If United rejected the application Wild West would

attempt to sell the note elsewhere. At the time the instant note was executed and assigned, Wild West was executing and assigning from one hundred to three hundred notes and security agreements per month.

When United agreed to purchase a note and security agreement it would so notify Wild West by telephone. Wild West would then prepare and sign a sight draft envelope for the amount of the note on a form previously provided by United. Wild West would put the note and security agreement, the purchaser's statement, and credit inquiry authorization into the envelope and mail it to the Fourth National Bank. Fourth National automatically transferred the amount of the sight draft from United's account to Wild West's account.

About a week after United agreed to purchase a note and security agreement, it would receive the sight draft envelope and its contents from the Fourth National Bank. A United employee would open the envelope and verify the amount of the sight draft. The note had already been purchased; therefore, none of the other documents in the envelope were examined.

Because United did not deal directly with the automobile purchaser, Wild West was required to minimize United's risk in two ways. First, Wild West was required to guarantee a set payment to United in the event a customer defaulted. The amount to be paid by Wild West was determined by calculating the difference between the sales price to the consumer and the cost of the automobile to the dealer. In the Lorg transaction, Wild West agreed to and did pay United $912.37. Second, Wild West expressly warranted that the purchaser of the vehicle was twenty-one years of age and had the capacity to make a valid contract. If these representations were false, Wild West was required to repurchase the note, paying the entire unpaid balance plus interest.

Wilson testified that the Lorg transaction was typical. When Wild West sold the car to Kathleen and Ronald Lorg, it called United to sell the note. The information, however, incorrectly stated Ronald's age as forty-one. United called the credit bureau and approved the loan, provided Wild West would agree to a default payment of $912.37. Wild West agreed and a sight draft for $5,315.25 was prepared and sent to the Fourth National Bank. The draft was paid and was sent to United along with the other documents.

Wild West argues United has waived its right to enforce the war-

ranty clause and is now estopped from doing so. To support this position Wild West relies on K. S. A. 84-2-208, which allows a course of performance to override the express terms of a warranty. The statute provides:

"(1) Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement.

"(2) The express terms of the agreement and any such course of performance, as well as any course of dealing and usage of trade, shall be construed whenever reasonable as consistent with each other; but when such construction is unreasonable, express terms shall control course of performance and course of performance shall control both course of dealing and usage of trade (84-1-205).

"(3) Subject to the provisions of the next section on modification and waiver, such course of performance shall be relevant to show a waiver or modification of any term inconsistent with such course of performance."

Defendant introduced evidence of several previous transactions which indicated that United had previously accepted notes from Wild West which had been executed by customers who were under twenty-one years of age. Because of this course of conduct Wild West argues United has given up its right to rely on the express warranty provision requiring Wild West to guarantee the age and legal capacity of its customers who execute notes which are sold to United.

K. S. A. 84-2-208 applies only to sales which are made subject to Article 2 of the Uniform Commercial Code. The transaction before this court involves the sale of chattel paper and is governed by Article 9 of the code. (K. S. A. 1976 Supp. 84-9-102 [1] [b].) Article 9 contains no provision to modify warranties by course of performance. The provisions of Article 2 relative to course of performance are not a defense to an action based on the warranty in an assignment clause of a security agreement under the provisions of Article 9.

Wild West further argues the general principles of waiver and equitable estoppel apply. Waiver in contract law implies that a party has voluntarily and intentionally renounced or given up a known right, or has caused or done some positive act or positive inaction which is inconsistent with the contractual right. (*Proctor Trust Co. v. Neihart,* 130 Kan. 698, 705, 288 Pac. 574, and cases cited therein.) Once it has been established that a right has been waived, the party possessing the contractual right is precluded from assert-

ing it in a court of law. (28 Am. Jur. 2d, Estoppel and Waiver, § 156, p. 838.)

Closely akin to this argument is Wild West's argument that United is equitably estopped from asserting its rights against Wild West. Equitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts. (*Wichita Federal Savings & Loan Ass'n v. Jones*, 155 Kan. 821, 130 P. 2d 556; 31 C. J. S., Estoppel, § 59, p. 367.)

Wild West's reliance on waiver and equitable estoppel is predicated on United's knowledge of Ronald Lorg's age. The trial court found that United did not know that Ronald was seventeen at the time the note was purchased. A review of the record reveals this finding is supported by substantial competent evidence. The trial court correctly held that United did not waive its right to rely on the warranty and is not estopped to enforce it.

Wild West next asserts that the contract is ambiguous and should be construed in its favor. The issue was not raised in the trial court and cannot now be reviewed by this court. (*Klaus v. Goetz*, 211 Kan. 126, 505 P. 2d 726; *In re Estate of Pyke*, 199 Kan. 1, 427 P. 2d 67.)

Finally, Wild West believes the trial court committed error by dismissing Ronald Lorg as a party before litigation on the issue of whether he was liable for the car because it was a necessity. The record reflects that Ronald was dismissed as a party defendant by agreement between Wild West and United. Wild West cannot now claim error based upon the court order it requested.

The judgment of the trial court is affirmed.