IN THE SUPREME COURT OF THE STATE OF KANSAS

NO. 111,651

STECKLINE COMMUNICATIONS, INC.,
*Appellant*,

v.

JOURNAL BROADCAST GROUP OF KANSAS, INC.,
*Appellee.*


SYLLABUS BY THE COURT


1.

The degree to which a party must demonstrate standing depends on the stage of the proceedings. Each element must be proved in the same way as any other matter and with the degree of evidence required at the successive stages of the litigation.


2.

When a defendant uses K.S.A. 2015 Supp. 60-212(b)(6) to challenge the legal sufficiency of a claim, the court decides the issue based on the well-pled facts of the petition. Because factual disputes cannot be resolved on a motion to dismiss, courts must resolve every doubt in plaintiff's favor when determining whether the petition states any valid claim for relief. Dismissal is proper only when the allegations in the petition clearly demonstrate that plaintiff does not have a claim.


3.

A party asserting equitable estoppel bears the burden of proving that another party, by acts, representations, admissions, or silence when that other party had a duty to speak, induced the party asserting estoppel to believe certain facts existed. The party asserting estoppel must also show that the party reasonably relied and acted upon such belief and

would now be prejudiced if the other party were permitted to deny the existence of such facts.

4.

Estoppel is a judicial doctrine sounding in equity, and its application depends heavily on the circumstances of each case. Courts should be cognizant of the policies animating the doctrine and abstain from applying it in a formulaic manner.

Review of the judgment of the Court of Appeals in an unpublished opinion filed June 26, 2015. Appeal from Sedgwick District Court; RICHARD T. BALLINGER, judge. Opinion filed January 27, 2017. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded.

*William P. Tretbar*, of Fleeson, Gooing, Coulson & Kitch, LLC, of Wichita, argued the cause, and *Adam R. Burrus*, of the same office, was with him on the briefs for appellant.

*Jay F. Fowler*, of Foulston Siefkin LLP, of Wichita, argued the cause, and *Amy S. Lemley* and *Alex W. Schulte*, of the same office, were with him on the brief for appellee.

The opinion of the court was delivered by

STEGALL, J.: Steckline Communications, Inc. (SCI) appeals the Court of Appeals' decision affirming the district court's grant of Journal Broadcast Group of Kansas, Inc.'s (JBGK) motion to dismiss SCI's lawsuit for breach of contract on the grounds that SCI lacked standing because it was not a party to the contract. In 2003, Mid America Ag Network, Inc. (MAAN, Inc.) and JBGK entered into a settlement agreement that set forth terms governing the next 15 years of dealings between the companies. The agreement contained a clause that allowed for binding assignments but also stated that "neither party shall assign [the agreement] without the prior written consent of the other party, which

2

consent shall not be unreasonably withheld." In 2005, MAAN, Inc. allegedly sold its business contracts, including the agreement, as well as the right to do business under the name Mid America Ag Network (MAAN) to SCI without JBGK's consent. Despite the lack of consent, SCI and JBGK continued to do business with each other pursuant to the agreement's terms until 2012 when the problems leading to the lawsuit arose.

During litigation, JBGK argued that the alleged assignment failed for lack of written consent, and therefore, SCI was not a party to the agreement and had no standing to sue for breach. SCI responded that JBGK was either estopped from or had waived its ability to enforce the written consent requirement. The district court granted JBGK's K.S.A. 2015 Supp. 60-212(b)(6) motion to dismiss for failure to state a claim, finding that SCI lacked standing to sue. The trial court did not, however, directly address the waiver or estoppel arguments. The Court of Appeals affirmed, adding that the agreement contained a provision that no future course of conduct shall be interpreted to amend or modify the agreement—thus eliminating the legal possibility of a waiver.

On these facts, and at this stage of the litigation, we find that it was error for the district court to grant JBGK's motion to dismiss. SCI has set forth a colorable claim that JBGK is equitably estopped from asserting SCI lacked standing on the grounds of an inadequate assignment. As such, we reverse and remand this case for further proceedings consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

In 1977, Larry Steckline formed Mid America Ag Network and later created MAAN, Inc. with the goal of producing market reports and other radio programming for those in the agricultural community. In 2003, JBGK entered into a settlement agreement with MAAN, Inc., which established the terms of the parties' ongoing business

3

relationship for the next 15 years. The agreement generally states that MAAN, Inc. will provide radio programming to JBGK, which broadcasts the programming. Among the several provisions contained in the agreement, the following are relevant to this appeal:

"13. **Termination of Prior Agreements; Entire Agreement.** . . . Effective August 1, 2003, this 2003 Agreement will represent the sole and entire agreement of the parties related to any radio station or other asset of JBGK and its affiliates or to [MAAN, Inc.] and its affiliates.

"14. **Binding Effect; Assignment.** This 2003 Agreement shall be binding upon and inure to the benefit of the successors, heirs and assigns of each party, provided, however, that [MAAN, Inc.] shall not assign this 2003 Agreement, or any interest therein, to any Wichita radio broadcast competitor of JBGK, without the prior written consent of Douglas G. Kiel or Steven J. Smith (or their respective successors), which consent may be withheld by them in their sole discretion; and (ii) neither party shall assign this 2003 Agreement without the prior written consent of the other party, which consent shall not be unreasonably withheld.

. . . .

"16. **Amendment.** This Agreement shall only be amended or altered through a written agreement signed by an authorized officer of each party. No future course of conduct shall be interpreted to amend or modify the express terms of this 2003 Agreement."

In 2005, SCI purchased various assets from MAAN, Inc., which included its tradenames—such as Mid America Ag Network (MAAN)—and its business contracts, including the agreement under which MAAN, Inc. and JBGK were operating. SCI concedes that there was no written consent obtained from JBGK regarding MAAN, Inc.'s purported assignment of the contract. Thereafter, JBGK changed the call letters

4

associated with the AM station from KFTI to KLIO, and SCI provided broadcasting content for JBGK.

An incident occurred on June 29, 2012, in which inappropriate language was broadcast during the time slot provided for MAAN, Inc. The parties continue to dispute the unresolved facts of who was responsible for the incident and whether there were other prior ongoing problems between the parties. Following the incident, JBGK stopped broadcasting programming pursuant to the agreement.

In December 2012, SCI sued JBGK for breaching the agreement. The petition noted SCI's asset purchase, which it later showed occurred in 2005. JBGK asserted in its answer that it did not know of SCI's acquisition of assets from MAAN, Inc. and denied any business relationship with SCI. JBGK admitted, however, that it had changed the station's call letters from KFTI to KLIO. JBGK also asserted a counterclaim under the agreement's indemnification clause.

Following discovery, the district court issued a pretrial order superseding all pleadings. Among the several allegations set forth in the pretrial order was SCI's assertion that it had purchased "various assets" from MAAN, Inc., including trade names and the contract rights from the agreement. SCI further claimed that JBGK "was aware of this transfer, did not object to it and is estopped from denying that [SCI] is entitled to enforce [the agreement]." The pretrial order described JBGK's position that SCI is not "the proper party to make such a claim by having failed to provide [JBGK] notice of assignment of any rights under [the agreement] between [JBGK] and [MAAN, Inc.]"

Following the pretrial order, SCI moved for summary judgment on its breach of contract claim as well as on JBGK's counterclaim. The district court heard arguments relating to the motion on January 30, 2014. The district court's statements made during

this hearing suggests that it was unsure about whether it was ruling on standing. Prior to hearing the parties' arguments, the court explained that its preliminary concern was that because there was no written assignment there could be no assignment. Yet, the district court also preliminarily opined that a contract existed because the parties "acted like there is a contract[,] [t]hey gave notice like there is a contract[, and] [t]hey complained like there was a contract."

Following the parties' arguments, the district court again noted that the written consent provision of the assignments clause was not met, saying "I agree clearly as far as suing on the original contract there is no standing." Even so, the court still opined that, given the years of dealings between the parties, there could be some sort of an "equitable contract" between SCI and JBGK. The court also discussed giving SCI 30 to 60 days to "tidy up the issue" so the district court would not have to dismiss it for lack of standing but then stated that it was "not going to do that." Immediately thereafter, defense counsel asked the district court to clarify its ruling, and the court stated:

> "They're going to have to prove the terms of the contract. That's their problem. And if [SCI's counsel] wants to tie that up between now and then to amend the petition to show they gave notice, which would be a lot cleaner, he certainly has the option to do that."

Despite the statements in court, the journal entry of the order—which refers back to the "reasons more fully articulated from the bench"—does not clearly articulate these concerns. In the journal entry, the district court denied SCI's motion for summary judgment because there were disputed issues of material fact. The court found that there was no dispute of material fact relating to JBGK's counterclaim. The journal entry simply states that "[t]here is no contractual claim for costs and attorney fees." The order is unclear as to whether this is because the district court had held there was no contract between the parties—and therefore no indemnification clause—or because the district

6

court had held the terms of the indemnification clause did not provide for the attorney fees JBGK was requesting.

Shortly before the journal entry was entered, JBGK filed a motion to dismiss pursuant to K.S.A. 2015 Supp. 60-212(b)(6), arguing that the district court had previously ruled during the January 30, 2014, hearing that SCI lacked standing to sue for breach of the agreement. SCI opposed the motion, arguing that there was a genuine issue of material fact as to whether JBGK waived the notice requirements in the assignment clause, which would result in SCI having standing to sue for breach. It further claimed that the issue of standing had not been properly presented to the court for resolution. The district court granted the motion to dismiss stating, "I think I have no choice but to dismiss it for lack of standing, period." While the parties and the court mentioned estoppel and waiver, the district court did not discuss these doctrines in detail.

Because the district court dismissed this case when it found that SCI lacked standing, several ongoing factual disputes remain unresolved. However, as we make clear below, none of these factual disputes are relevant to the narrow issue before us of whether SCI had alleged sufficient facts which, if true, would establish standing to assert its breach of contract claims.

ANALYSIS

The Court of Appeals affirmed the district court's dismissal for lack of standing holding that it was undisputed that MAAN, Inc. had never obtained written consent from JBGK for the assignment and the subsequent amendment clause of the contract acted as an anti-waiver provision.

7

"Paragraph 16 of the settlement agreement stipulated that it could only be amended through written agreement signed by each party and that '[n]o future course of conduct shall be interpreted to amend or modify the express terms of this 2003 Agreement.' As it is our duty to uphold contracts whenever possible, [citation omitted], SCI's argument that there is a material question of fact regarding whether [JBGK] waived the assignment provisions of the settlement agreement through its acceptance of SCI's performance in lieu of MAAN's is not persuasive because it is not possible for [JBGK] to waive the assignment provisions of the settlement agreement through its conduct." *Steckline Communications, Inc. v. Journal Broad. Group of Kansas, Inc.*, No 111,651, 2015 WL 4366489, at *5 (Kan. App. 2015) (unpublished opinion).

While the parties argue about the meaning of Paragraph 16—and whether it can render SCI's subsequent amendment by waiver claim a legal impossibility—we need not reach that issue. SCI's equitable estoppel theory was thoroughly preserved and presented to the district court. See *Newell v. Krause*, 239 Kan. 550, 554, 722 P.2d 530 (1986) (finding that defendant properly preserved objection to service of process by raising the contention in his answer and the pretrial order), *disapproved of on other grounds by In re B.D.-Y.*, 286 Kan. 686, 187 P.3d 594 (2008). That theory, if adequately supported, can provide an alternative legal route to establish standing to bring the breach of contract claims.

The only question we resolve here is whether SCI has alleged sufficient facts which, if true, would establish its standing to pursue the claims it asserts. Generally, standing is a legal question over which we exercise plenary review. *Kansas Bldg. Industry Workers Comp. Fund v. State*, 302 Kan. 656, 676, 359 P.3d 33 (2015). Likewise, we review decisions to dismiss for failure to state a claim de novo. *Cohen v. Battaglia*, 296 Kan. 542, 545, 293 P.3d 752 (2013). Given the narrowness of the issue and the fact that we resolve it in favor of SCI, we need not reach the questions of contract interpretation presented by the parties in this appeal.

"Standing is a jurisdictional question in which courts determine whether a party has alleged a sufficient stake in the outcome of a controversy to warrant invocation of jurisdiction and to justify exercise of the court's remedial powers on that party's behalf." *Board of Johnson County Comm'rs v. Jordan*, 303 Kan. 844, 854, 370 P.3d 1170 (2016). The plaintiff must demonstrate a cognizable injury that affects him or her in a "'personal and individual way.'" *Sierra Club v. Moser*, 298 Kan. 22, 35-36, 310 P.3d 360 (2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1, 112 S. Ct. 2130, 119 L. Ed. 2d 351 [1992]).

Generally, parties to a suit must assert their own legal rights and interests rather than those of third parties. *Peterson v. Ferrell*, 302 Kan. 99, 102-03, 349 P.3d 1269 (2015). SCI was not a party to the agreement, so to have standing, SCI would ordinarily be required to show that MAAN, Inc. assigned its interest to SCI. See *Kincaid v. Dess*, 48 Kan. App. 2d 640, 646-47, 298 P.3d 358, *rev. denied* 297 Kan. 1246 (2013); see also *Professional Lens Plan, Inc. v. Polaris Leasing Corp*, 234 Kan. 742, Syl. ¶ 1, 675 P.2d 887 (1984) (explaining privity of contract); 6 Am. Jur. 2d, Assignments § 134 ("[A]n assignee acquires the rights of the assignor, including the right to enforce the assigned obligation."). Standing must be "proved in the same way as any other matter and with the degree of evidence required at the successive stages of the litigation." *Gannon v. State*, 298 Kan. 1107, 1123, 319 P.3d 1196 (2014) (citing *Lujan*, 504 U.S. at 561).

When a defendant uses K.S.A. 2015 Supp. 60-212(b)(6) to challenge the legal sufficiency of a claim, the court must decide the issue based only on the well-pled facts and allegations, which are generally drawn from the petition. Courts must resolve every factual dispute in the plaintiff's favor when determining whether the petition states any valid claim for relief. Dismissal is proper only when the allegations in the petition clearly demonstrate that the plaintiff does not have a claim. *Halley v. Barnabe*, 271 Kan. 652,

9

656, 24 P.3d 140 (2001) (citing *Ripley v. Tolbert*, 260 Kan. 491, 493, 921 P.2d 1210 [1996], and *Bruggeman v. Schimke*, 239 Kan. 245, 247-48, 718 P.2d 635 [1986]). Likewise, appellate courts reviewing a district court's decision to grant a motion to dismiss will assume as true the well-pled facts and any inferences reasonably drawn from them. If those facts and inferences state *any* claim upon which relief can be granted, dismissal is improper. *Cohen v. Battaglia*, 296 Kan. 542, 545-46, 293 P.3d 752 (2013).

SCI contends that JBGK is estopped from challenging MAAN, Inc.'s assignment of the agreement by virtue of JBGK's continued performance under the terms of the agreement between 2005 and 2012. This contention—along with attendant factual claims—was included in the pretrial order. By statute, the pretrial order "controls the subsequent course of the action unless the court modifies it." K.S.A. 2015 Supp. 60-216; see *Bob Eldridge Constr. Co. v. Pioneer Materials, Inc.*, 235 Kan. 599, Syl. ¶ 8, 684 P.2d 355 (1984) (explaining that no other document must be filed after the pretrial order to amend the pleadings). "A pretrial order which specifies the issues to be tried supersedes *and replaces the pleadings*." (Emphasis added.) *Oller v. Kincheloe's, Inc.*, 235 Kan. 440, 448, 681 P.2d 630 (1984) (citing *Herrell v. Maddux*, 217 Kan. 192, 535 P.2d 935 [1975]); see *Unruh v. Purina Mills*, 289 Kan. 1185, 1191, 221 P.3d 1130 (2009) ("The pretrial order supersedes any pleadings and has the effect of amending the pleadings to conform to it."); *Nungesser v. Bryant*, 283 Kan. 550, 559, 153 P.3d 1277 (2007) ("[T]he ultimate legal issues and theories on which the case will be decided are reduced to writing in the pretrial order, typically entered at the close of discovery."); see also *Bussman v. Safeco Ins. Co. of America*, 298 Kan. 700, 708, 317 P.3d 70 (2014) ("Generally, a trial court should not entertain an issue or claim that is omitted from the pretrial order.").

Throughout this case, SCI has alternated between arguing estoppel and waiver. Some confusion over the terms is not unusual:

"Waiver and estoppel are closely related, and the terms are sometimes loosely used as convertible, interchangeable, or synonymous, especially where waivers implied, and estoppels arising, from conduct are involved, the dividing line being very shadowy in such cases. Where the waiver relied on is constructive, or merely implied from the conduct of a party, irrespective of what his or her actual intention may have been, it is at least questionable if there are not present some of the elements of estoppel." 31 C.J.S., Estoppel and Waiver § 90.

The two theories significantly overlap and often occur together:

"Waiver in contract law implies that a party has voluntarily and intentionally renounced or given up a known right, or has caused or done some positive act or positive inaction which is inconsistent with the contractual right. Once it has been established that a right has been waived, the party possessing the contractual right is precluded from asserting it in a court of law.

"Closely akin to this argument is [defendant's] argument that [plaintiff] is equitably estopped from asserting its rights against [defendant]. Equitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts. [Citations omitted.]" *United American State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc.*, 221 Kan. 523, 526-27, 561 P.2d 792 (1977).

This case, however, illustrates the difference between the two theories. In sum, waiver is the intentional surrender of a right, while estoppel is the legal inability to assert a right. Because the gravamen of a waiver claim is the voluntary relinquishment of a right (or its continued existence), it is possible for a party to inoculate itself against future

11

claims that it has waived a contractual right by including a valid anti-waiver provision in the contract. See *United American State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc.*, 221 Kan. 523, 526, 561 P.2d 792 (1977) ("Waiver in contract law implies that a party has voluntarily and intentionally renounced or given up a known right, or has caused or done some positive act or positive inaction which is inconsistent *with the contractual right*." [Emphasis added.]); 28 Am. Jur. 2d, Estoppel and Waiver § 35 ("Equitable estoppel focuses on a party's detrimental reliance on another party's conduct while a waiver analysis focuses on a party's unequivocal intent to relinquish a known right."). Estoppel, on the other hand, is a judicial doctrine sounding in equity that effectively draws the sting of an existing legal right by preventing its enforcement. Thus the continued existence of the right itself does not preempt a claim of equitable estoppel.

When a party asserts equitable estoppel, this party bears the burden to establish

"that another party, by acts, representations, admissions, or silence when that other party had a duty to speak, induced the party asserting estoppel to believe certain facts existed. The party asserting estoppel must also show that the party reasonably relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts." *Owen Lumber Co. v. Chartrand*, 283 Kan. 911, 927, 157 P.3d 1109 (2007).

The party asserting equitable estoppel will not prevail "where facts are ambiguous or subject to more than one construction." *Rockers v. Kansas Turnpike Authority*, 268 Kan. 110, 116, 991 P.2d 889 (1999). Needless to say, equitable estoppel cannot exist if any essential element is missing or is not satisfactorily proved. *Gillespie v. Seymour*, 250 Kan. 123, 129-30, 823 P.2d 782 (1991).

The policy underlying equitable estoppel is that "it would be unconscionable to allow a person to maintain a position inconsistent with one in which he or she accepted a

benefit." 28 Am. Jur. 2d, Estoppel and Waiver § 60. Moreover, "a hallmark of the doctrine is its flexible application[.]" *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 59, 104 S. Ct. 2218, 81 L. Ed. 2d 42 (1984). Courts should be cognizant of the policies animating the doctrine and abstain from applying it in a formulaic manner. See *Cain v. Jacox*, 302 Kan. 431, 435, 354 P.3d 1196 (2015) (explaining that courts considering the application of other equitable doctrines such as res judicata should employ "a flexible and common-sense construction in order to vindicate its fundamental goals which are embedded in the requirements of justice and sound public policy"); see also *Fleetwood Enterprises v. Coleman Co.*, 37 Kan. App. 2d 850, 865, 161 P.3d 765 (2007) (stating that the application of equitable estoppel "must depend on its own facts").

Equitable estoppel is not limited to claims sounding purely in equity and can operate to establish one or more elements of a contract claim. See *Mutual Life Ins. Co. v. Bernasek*, 235 Kan. 726, 729-30, 682 P.2d 667 (1984) (stating that equitable estoppel arises in both law and equity); 28 Am. Jur. 2d, Estoppel and Waiver § 26 ("Equitable estoppel is not limited to claims brought in equity as it may also apply to preclude the assertion of rights and liabilities under a note or contract."); see also *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 382-83, 855 P.2d 929 (1993) (remanding case to district court to determine whether party to oil and gas leases should be equitably estopped from claiming termination of the leases was required); *In re Partnership of PB&R*, 52 Kan. App. 2d 871, 880, 380 P.3d 234 (2016) ("[E]quitable estoppel . . . prevents one party from enforcing a contract against another.").

After a thorough review of the record and the pretrial order, we conclude that SCI asserted well-pled facts that JBGK, by its silence at the time of the assignment, induced SCI into believing that it had consented to the assignment of the agreement; that JBGK received several years of service from SCI pursuant to the terms of the agreement; that

SCI rightfully relied on that course of conduct; and that SCI would be prejudiced or harmed by permitting JBGK to void the agreement by objecting to the assignment 7 years later.

Viewing the well-pled facts in a light most favorable to SCI, and resolving any factual disputes in SCI's favor, we find that SCI has sufficiently pled standing via equitable estoppel. In other words, if SCI can continue to prove the factual basis of its estoppel claim, JBGK will be prevented from asserting its contractual right to consent in writing to the assignment of the contract. Without the requirement of written consent from JBGK, there is nothing before us today demonstrating that the assignment from MAAN, Inc. to SCI was ineffective, and SCI has standing to assert claims for breach of the contract.

Reversed and remanded for further proceedings.

BILES, J., not participating.

RICHARD D. ANDERSON, District Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** District Judge Anderson was appointed to hear case No. 111,651 vice Justice Biles under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.