NOT DESIGNATED FOR PUBLICATION

No. 116,620

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOHN MACKLIN, d/b/a TUXMICRO DEVICES,
*Appellant*,

v.

LIQUIDYNAMICS, INC.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID L. DAHL and TIMOTHY HENDERSON, judges. Opinion filed February 16, 2018. Affirmed.

*Nicholas R. Grillot*, of Hinkle Law Firm, LLC, of Wichita, for appellant.

*Derek S. Casey*, of Triplett Woolf Garretson LLC, of Wichita, for appellee.

Before LEBEN, P.J., HILL, J., and WALKER, S.J.

PER CURIAM: John Macklin appeals from multiple alleged faults with the district court's handling of his civil intellectual property and contracts case. Liquidynamics Inc., a company in the fluid management industry, employed Macklin to develop programs to run a proprietary fluid control system. Macklin contends that the district court erred by requiring him to employ a third-party to review Liquidynamics program code, while also prohibiting him from using the third-party as an expert witness. He further argues the district court erred in its handling of Liquidynamics motion for summary judgment. Finally, he argues that there was insufficient evidence for the jury to find that he waived

1

his right to recover compensation for hours of work he failed to bill. Because we find no errors requiring reversal, the decision of the district court is affirmed.

FACTS

In 2011, Macklin and Liquidynamics formed a relationship to develop a computer system "to manage the dispensing of oil." To facilitate the arrangement, the parties entered into a "Mutual Non-disclosure, Non-competition, Non-circumvention and Non-poaching agreement," which maintained ownership interests in confidential information that both Macklin and Liquidynamics owned separately. However, the parties disagreed on the exact nature of this relationship. Macklin contended this was a joint venture with profit sharing, whereas Liquidynamics argued that Macklin was an independent subcontractor for a specific project.

The parties dispute how effective the products were during the relationship, but the relationship produced two technology products: Oil Cadet and Oil Cop. During the course of the relationship, Macklin submitted numerous invoices for his work but repeatedly billed Liquidynamics for fewer hours than he actually worked. Macklin later indicated that he did this, in part, due to a belief that he was in a joint venture with Liquidynamics and had the goal to keep development costs low for the venture. The parties further dispute whether Liquidynamics paid Macklin in full for the hours that he billed.

At some point prior to August 2013, Liquidynamics redesigned the Oil Cop system. The parties disputed whether Liquidynamics removed all of Macklin's work from the final retail product. In either event, Liquidynamics sold and installed the product for customers near or after the end of its relationship with Macklin. In August 2013, Macklin sent a letter claiming an ownership interest in the Oil Cop system and contending that Macklin had incorporated his personal intellectual property into the system. In response,

Liquidynamics terminated its relationship with Macklin. Liquidynamics claimed that Macklin's involvement with the Oil Cop system cost over $146,000.

On December 9, 2013, Macklin filed a civil suit against Liquidynamics. Macklin sought seven counts of relief from Sedgwick County District Court: (1) a declaratory judgment that he owned 20 properties prior to his relationship with Liquidynamics; (2) injunctive relief to prevent Liquidynamics from distributing his trade secrets; (3) compensatory relief for a share of Liquidynamics profits from the alleged joint venture to sell Oil Cop; (4) compensatory relief, in the alternative, for the unbilled hours Macklin worked on the Oil Cop system; (5) damages for Liquidynamics' alleged breach of the nondisclosure agreement; (6) damages for Liquidynamics' alleged misappropriation of his trade secrets under the Kansas Unified Trade Secret Act (KUTSA); and (7) damages for Liquidynamics' alleged violations of the federal Computer Fraud and Abuse Act.

On December 26, 2013, Liquidynamics removed the case to federal court, but the federal court dismissed Macklin's Computer Fraud and Abuse Act claim and remanded to Sedgwick County District Court on July 28, 2014. On August 29, 2014, the district court ordered that discovery would end on January 28, 2015, but this date was extended to February 27, 2015, and then to August 28, 2015, in subsequent amended orders. On September 25, 2015, the district court filed an agreed pretrial conference order. Liquidynamics listed one expert witness, but Macklin did not list any expert witnesses. In accordance with this order, all discovery ended, with the exception of a review of the Oil Cop source code "pursuant to an appropriate protective order."

On October 8, 2015, Liquidynamics filed a motion for summary judgment. In its motion, Liquidynamics conceded, for the purposes of the motion, that Macklin owned the 20 properties he claimed in his first count, which, according to Liquidynamics, ended any potential controversy on that issue. Next, Liquidynamics argued that there was no evidence that it had or intended to sell any product using Macklin's intellectual property

and thus injunctive relief was not necessary. Additionally, Liquidynamics contended there was no evidence of a joint venture or profits from a joint venture and therefore Macklin had no claim in count 3.

Liquidynamics continued its argument, by asserting it was uncontroverted that the company paid Macklin's invoices in full, and the only dispute should be whether he was entitled to additional, unbilled compensation. Liquidynamics asserted Macklin was not entitled to compensation, as he waived any right to that compensation by intentionally underbilling the company. The company further contended there was no evidence of a breach of the nondisclosure agreement or misappropriation of trade secrets. As an attachment to its motion, Liquidynamics also included a report from an expert witness retained by the company, which indicated that Liquidynamics' Oil Cop system did not include any piece of Macklin's intellectual property. On November 10, 2015, Macklin filed his response and refuted Liquidynamics' claims.

On December 16, 2015, Macklin filed a motion to compel Liquidynamics to submit the source code, and other files associated with Oil Cop, for review by himself personally, subject to a protective order. The "source code" for a product is the root source of a computer program, containing a variety of declarations and instructions which tell a computer program how to function. Once a source code is created, it is then converted by a software program (known as a compiler) into language which can be understood by a computer processor.

Macklin filed this motion as Liquidynamics would not release its source code for review by Macklin personally and, instead, demanded a protective order requiring a third-party review the source code.

On December 17, 2015, the day after Macklin filed his motion to compel, the district court held a hearing on Liquidynamics' motion for summary judgment. The

4

district court did not rule on the summary judgment motion at the hearing and instead decided to wait for another judge within the district to resolve Macklin's motion to compel. The hearing on that motion took place on January 7, 2016. After hearing arguments from both parties, the district court judge hearing the matter decided to grant Macklin's motion to compel, subject to a protective order that prohibited him from reviewing Liquidynamics' source code and required a third-party to conduct the review.

On March 18, 2016, Macklin filed a second motion to compel the production of the source code. In this motion, Macklin accused Liquidynamics of withholding source code files that the company was required to submit for review after the prior motion to compel. The same day, Macklin filed a motion to amend the pretrial order to allow him to introduce evidence from his third-party review of Liquidynamics' code and to endorse the third-party who conducted the review as an expert.

On March 22, 2016, the district court held a hearing on Macklin's motion to amend the pretrial order. After hearing the arguments of the parties, the court denied Macklin's motion. The court held that amending the pretrial order at this late stage would lead to significant prejudice and cost for Liquidynamics. Additionally, the court found bad faith in Macklin's actions to delay announcing an expert witness. Finally, during the same hearing, the district court prohibited Macklin's expert from testifying but delayed action on his second motion to compel pending the result of Liquidynamics' summary judgment motion.

On April 1, 2016, the district court held a hearing on Liquidynamics' summary judgment motion. The court announced that it had adopted Liquidynamics' statement of facts and conclusions of law for counts 1, 2, 5, and 6 of Macklin's pleading. Specifically, the court held that there was "not evidence sufficient to meet the summary judgment standard to allow those counts to go to a jury." However, the district court did allow the joint venture and unpaid invoices claims to proceed to trial.

The district court held a two-day jury trial on those two remaining issues on August 8 and 9, 2016. Macklin testified on his own behalf. Macklin further offered Cheryl McGuire, a vice president of Liquidynamics, who testified about sales of the Oil Cop program in which Macklin assisted. Macklin further introduced three exhibits into evidence. Liquidynamics offered the testimony of Mark McClatchey, a project manager, to discuss the nature of the Oil Cop program and Macklin's relationship with its development. The company further recalled and offered the testimony of McGuire to discuss the process of paying Macklin's invoices. Finally, Liquidynamics introduced one exhibit.

After hearing the evidence and arguments of the parties, the jury decided that Macklin likely did not form a joint venture with Liquidynamics but instead found Macklin more likely entered into an independent contractor relationship with the company. The jury also found that, while Macklin may have worked uncompensated hours while acting as a contractor, he likely waived any claim he had to compensation for those hours.

Macklin has timely appealed from the decisions of the district court and the jury.

ANALYSIS

*The district court's decision prohibiting Macklin from personally seeing the source code*

On appeal, Macklin first argues that the district court abused its discretion by determining that Liquidynamics' source code was protected as a trade secret. Specifically, Macklin argues that Liquidynamics failed to prove that releasing the source code through the discovery process would harm Liquidynamics. In response, Liquidynamics contends it demonstrated a specific threat that Macklin posed based on his history of copying code from other authors without attribution.

District courts have broad discretion in supervising the course and scope of discovery. *Miller v. Johnson*, 295 Kan. 636, 688, 289 P.3d 1098 (2012). A district court abuses its discretion when no reasonable person would take the view of the court. A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the district court; (2) is based on an error of law; or (3) is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

The district court was within its authority to limit discovery if it determined that the source code was protected as a trade secret. A district court may issue a protective order in a civil case "for good cause . . . to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense . . . requiring that a trade secret or other confidential research, development or commercial information not be revealed or be revealed only in a specified way." K.S.A. 2016 Supp. 60-226(c)(1)(G). Since the Kansas statute is modeled after the federal rules of civil procedure, a panel of the Kansas Court of Appeals has previously applied analysis of the federal discovery rule to the Kansas trade secret discovery statute. See *Southwestern Bell Tel. Co. v. Kansas Corporation Commission*, 6 Kan. App. 2d 444, 455-56, 629 P.2d 1174 (1981). Since few courts have interpreted the Kansas statute, a similar application of analysis of the federal rule is helpful in this case.

Liquidynamics met its burden when it requested a protective order governing the production of its source code. Generally speaking, the party seeking protection must demonstrate that the material sought in discovery qualifies for protection and that the party will suffer harm without the protective order. To do this, under the federal rule, the party must make "'a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 501 (D. Kan. 2007). Once a party meets this burden, the burden shifts to the party seeking disclosure to prove the disclosure of the trade secret is relevant and necessary.

7

245 F.R.D. at 500. "Finally, the court must balance the need of the party seeking discovery of the trade secrets and confidential information against the opposing party's claim of injury resulting from the disclosure." 245 F.R.D. at 500.

For the first part of its burden, Liquidynamics moved to protect the source code for one of its programs as a trade secret. As Liquidynamics notes in its brief, a source code is routinely classified as qualifying for trade secret protection. See generally 2 Jager, Trade Secrets Law § 9:11 (2017). At trial, Macklin indicated that he approved of some protections for Liquidynamics' source code, only arguing against the scope of the protection. We note that on appeal Macklin does not challenge the district court's determination that source code is protectable as a trade secret. Therefore, we find the district court did not err by determining that Liquidynamics' source code was protectable as a trade secret.

For the second prong of its burden, Liquidynamics provided specific and particularized facts to support its claim that providing its source code personally to Macklin without the protective order would cause harm.

Federal courts have recognized that revealing confidential trade secret information to a competitor poses a greater risk of harm than disclosure to a noncompetitor. *Sioux Pharm, Inc. v. Eagle Laboratories, Inc.*, 865 N.W.2d 528, 538-39 (Iowa 2015). Liquidynamics asserted, at a hearing on Macklin's motion to compel, that Macklin continued to sell "many of the items that [Liquidynamics] paid [Macklin] to develop." Additionally, Liquidynamics' expert's report noted numerous instances where Macklin added files to the Oil Cop program that he copied from third-party developers but only added his own name and business information. We believe this evidence is sufficient to show that Liquidynamics had a reasonable belief that, if Macklin could view the company's source code without restriction, he might use the code in later versions of

8

Macklin's products. Thus Liquidynamics has met its burden and demonstrated good cause for a protective order. The district court did not abuse its discretion in granting the order.

On appeal, Macklin fails to provide a compelling argument that the district court erred by preventing him from personally accessing Liquidynamics' source code. While neither party challenges the need to disclose the source code, Macklin has not carried the burden to show that his personal access to the code was necessary. His only arguments on appeal are about Liquidynamics' risk of harm or need for a protective order. By failing to argue about his own need, he abandons that point on appeal. However, at trial he did argue that he needed to personally view the code to assist his attorney in determining if Liquidynamics used any of his code in the new products. But there is nothing in the record that explains why use of an expert by Macklin would be insufficient. In summary, we hold that the district court did not err by prohibiting Macklin from viewing Liquidynamics' code personally. Thus, the district court did not abuse its discretion by issuing the protective order.

*The district court's denial of Macklin's motion to amend the pretrial order*

For his next issue on appeal, Macklin contends that the district court abused its discretion by denying his motion to amend the pretrial order to add an expert witness. Macklin argues that the district court's decision to issue a protective order for Liquidynamics' source code necessitated the late requirement of an expert witness and to prevent him from presenting an expert witness was manifest injustice. Liquidynamics responds by noting that Macklin waited over two years from the commencement of this case, well after numerous deadlines to declare expert witnesses, before he moved to amend the pretrial order.

On appeal, we review the district court's denial of Macklin's motion to amend the pretrial order for an abuse of discretion. *Norton Farms, Inc. v. Anadarko Petroleum*

*Corp.*, 32 Kan. App. 2d 899, 902, 91 P.3d 1239 (2004). A district court abuses its discretion when its decision is based on an error of law or fact or when no reasonable person would take the view adopted by the court. *State v. Seacat*, 303 Kan. 622, 634-35, 366 P.3d 208 (2016). In exercising its discretion, the district court should have "proper regard for what is just and fair under the existing circumstances, and [should] not act in an arbitrary fashion or unreasonable manner." *Norton Farms, Inc.*, 32 Kan. App. 2d at 902.

Under K.S.A. 2016 Supp. 60-216(e), a district court may amend a final pretrial order "only to prevent manifest injustice." The party requesting the amendment must demonstrate manifest injustice at the time of the motion. *Herrell v. Maddux*, 217 Kan. 192, 195, 535 P.2d 935 (1975). When evidence is created in an untimely manner, the district court is within its discretion to deny a motion to amend the pretrial order to add the untimely evidence. *Norton Farms, Inc.*, 32 Kan. App. 2d at 902-04.

Here, the district court noted that Macklin missed numerous deadlines to disclose an expert witness. Macklin first attempted to disclose his expert witness on March 10, 2016, a week before the scheduled final hearing on Liquidynamics' motion for summary judgment and more than two years after the commencement of this case. From these facts, the district court found that Macklin failed to demonstrate manifest injustice and that his actions demonstrated bad faith. Additionally, the district court found that amending the pretrial order would prejudice Liquidynamics and disrupt the timing of the case.

Macklin's primary argument on appeal is that the district court's decision to prevent him from personally reviewing Liquidynamics' source code necessitated his need to introduce an expert witness and thus preventing him from using that expert witness amounts to manifest injustice. This argument is not persuasive. Macklin makes no indication or argument about why he chose not to retain his own expert after he received

10

notification of Liquidynamics use of an expert on May 1, 2015. At least by that point, Macklin was aware that he may need to retain his own expert to refute Liquidynamics' expert's testimony. The district court found bad faith in this delay and held that any injustice Macklin suffered by the district court's decision was self-inflicted.

Macklin instead argues that the amendment of the pretrial order would not prejudice Liquidynamics. However, this is not the standard of review on appeal. When reviewing the district court's actions under an abuse of discretion standard, we cannot find the district court's actions to be arbitrary. Nor does Macklin point to any erroneous findings of fact or conclusions of law by the district court. Instead, Macklin appears to ask us to reevaluate the factual situation in order to see if we would find manifest injustice. While we may or may not disagree with the district court's decision, there is no question the district court acted within its discretion, consistent with *Norton Farms, Inc.*, to deny Macklin's motion on the basis of bad faith and prejudice to Liquidynamics.

*The district court's grant of partial summary judgment*

Macklin next argues that the district court erred by resolving part of his claims by summary judgment, as there was a genuine issue of material fact. Specifically he argues that the court misunderstood his misappropriation claim. He further argues that the court erred by dismissing his copying claim, as he presented evidence of Liquidynamics use of his code in their software. Finally, he argues that he provided sufficient evidence on his damages claims, from Liquidynamics alleged misappropriation or copying of his intellectual property, to avoid summary judgment.

An appellate court reviews the district court's ruling on a motion for summary judgment de novo, viewing the facts in the light most favorable to the party opposing summary judgment. "If 'reasonable minds could differ as to the conclusions drawn from the evidence'—in other words, if there is a genuine issue about a material fact—summary

11

judgment should be denied. [Citation omitted.]" *Siruta v. Siruta*, 301 Kan. 757, 766, 348 P.3d 549 (2015).

An issue of fact is not genuine unless it has legal controlling force as to the controlling issue. A disputed question of fact which is immaterial to the issue does not preclude summary judgment. In other words, if the disputed fact, however resolved, could not affect the judgment, it does not present a "genuine issue" for purposes of summary judgment. *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 934, 296 P.3d 1106 (2013); *Sanchez v. U.S.D. No. 469*, 50 Kan. App. 2d 1185, 1192, 339 P.3d 399 (2014).

Here, the district court granted summary judgment on four of Macklin's six counts: his request for declaratory judgment that Macklin owns a list of properties, his request for injunctive relief to prevent Liquidynamics from selling products that incorporate the properties he claims; his claim that Liquidynamics violated the KUTSA; and his claim that Liquidynamics violated its nondisclosure agreement with him. To do this, the district court adopted Liquidynamics' statement of uncontroverted facts and conclusions of law.

On appeal, Macklin challenges the district court's summary judgment on only the trade secret misappropriation claim, the copying claim, and his claim for damages for misappropriation of a trade secret. Macklin points only to evidence that Liquidynamics sold its program, after receiving a cease and desist letter from Macklin, as evidence of a dispute over a material fact. However, Liquidynamics does not dispute that it sold its program after it received Macklin's letter. Instead, the dispute is whether the program that Liquidynamics sold contained any of Macklin's code. The only evidence on this point is Liquidynamics' expert's report, which found "no indications of any of Mr. Macklin's claimed intellectual property being used by Liquidynamics' Oil Cop fluid management system."

12

While Macklin tries to argue that the expert's report indicated Liquidynamics copied from Macklin, the expert's report is clear that nothing in Liquidynamics' source code was part of Macklin's claimed properties. Macklin further argues, without citation to the record, that there was evidence challenging the weight of the expert's evidence. However, the standard of review is to view the expert's evidence in the light most favorable to Macklin, which reveals that the expert's report is uncontroverted and it is clear that Liquidynamics did not use Macklin's work. Thus, there is no genuine dispute on the issue of misappropriation. In the absence of any evidence indicating misappropriation, the district court did not err by ruling for Liquidynamics on the issue of misappropriation.

Turning to the second argument, Macklin asserts that Liquidynamics' expert's report included evidence that Liquidynamics copied some of Macklin's code to use in its programs. However, as noted above, the expert's report stated that "[n]one of Mr. Macklin's alleged intellectual property is presently in Liquidynamics' Oil Cop fluid management system." Furthermore, Macklin takes the parts of the expert report out of context in order to claim it indicates copying by Liquidynamics. The report indicated there were numerous short similarities between Macklin's files and Liquidynamics' files. However, the expert noted that most of the similarities were either standard in the industry or were common terms and identifiers found in many programs, especially those that use the hardware components necessary for Oil Cop to function. Without any specific citation to evidence of a material dispute, and with the expert's report viewed in the light most favorable to Macklin, the district court did not err in its summary judgment ruling on the copying issue.

Finally, on the question of damages, Macklin argues that the amount of damages he may have been owed was still in dispute due to a lack of profit calculations from Liquidynamics.

Damages need not be proven with absolute certainty. The fact-finder can estimate damages using a reasonable basis for computation and the best evidence available under the circumstances. However, claims for damages that are conjectural and speculative cannot form a sound basis for an award. *Miller*, 295 Kan. at 677; *Ohlmeier v. Jones*, 51 Kan. App. 2d 1014, 1021, 360 P.3d 447 (2015).

Macklin has failed to meet his burden on appeal. When facts are necessary to an argument, the record must supply those facts and a party relying on those facts must provide an appellate court with a specific citation to the point in the record where the fact can be verified. See Supreme Court Rule 6.02(a)(4) (2018 Kan. S. Ct. R. 34).

Macklin does not cite to anything in the record indicating an actual dispute of material fact on the question of damages and instead makes a legal argument about what should be included in the calculation of damages. As noted above, Macklin carried the burden to produce evidence of his damages claim. In his brief, he fails to cite to any evidence that supports his damages claim, and instead, he chooses to argue that invoices from Liquidynamics showed profits that were improperly calculated as losses. Without citations to the record on appeal about what evidence Macklin believes supports his argument, we consider this argument to be abandoned.

*The district court's ruling on summary judgment when a motion to compel discovery was pending*

Macklin next argues that the district court abused its discretion when it ruled on Liquidynamics' summary judgment motion before ruling on his second motion to compel Liquidynamics to release additional source code files. Liquidynamics responds by arguing that the district court was allowed to order summary judgment as the requested discovery could not be used as evidence at trial. Furthermore, Liquidynamics argues that

14

the statute Macklin relied on to ask the district court to deny summary judgment pending discovery does not work for people who delay.

K.S.A. 2016 Supp. 60-256(f) gives the district court the discretion to deny a motion for summary judgment when discovery is needed. We once again apply the same standard—abuse of discretion—to the district court's decision under the cases we have previously cited above.

As a general rule, summary judgment in a pending case should not be granted until discovery is complete. However, if the facts pertinent to the material issues are not disputed, summary judgment may be appropriate even when discovery is unfinished. *Northern Natural Gas Co.*, 296 Kan. at 935. A party who requires additional discovery to defend against a motion for summary judgment must seek a continuance to conduct that discovery under K.S.A. 2016 Supp. 60-256(f). See *Chesbro v. Board of Douglas County Comm'rs*, 39 Kan. App. 2d 954, 966, 186 P.3d 829 (2008). A party cannot avoid summary judgment on the mere hope that something may develop later during discovery or at trial. Likewise, mere speculation is insufficient to avoid summary judgment. *Kincaid v. Dess*, 48 Kan. App. 2d 640, 656, 298 P.3d 358 (2013).

Under K.S.A. 2016 Supp. 60-256(f), the district court has discretion to delay or deny a summary judgment motion if the party opposing the motion shows that it cannot present facts essential to its opposition. Macklin requested additional software files from Liquidynamics in his second motion to compel discovery. However, this occurred after the district court denied his motion to amend the pretrial order and, thus, prevented his ability to introduce expert testimony.

The additional files would require an expert witness to introduce at trial. The Kansas Rules of Evidence prohibit nonexpert witnesses from offering opinions or inferences based on scientific, technical, or specialized knowledge. K.S.A. 2016 Supp.

60-456(a). Testimony about source code files would generally require scientific, technical, or specialized knowledge. Since Macklin failed to produce an expert witness that would be used at trial, he was unable to introduce anything learned from the additional source files. Therefore, the additional source files were not pertinent to the pending summary judgment motion, and the district court did not err by ruling on the summary judgment motion before ruling on Macklin's second motion to compel. We find no abuse of discretion by the district court on ruling on the summary judgment motion while Macklin's second motion to compel was pending.

*The jury's decision that Macklin waived his right to recover for uncompensated labor*

For his final argument on appeal, Macklin challenges the sufficiency of the evidence to support the jury's verdict that he waived his claim for compensation for unbilled hours he worked. Specifically, Macklin argues that he presented sufficient evidence to demonstrate that he did not waive his expectation for additional compensation for his work. He further asserts that there was no evidence to indicate that he intentionally abandoned his claim on payments for additional hours of work that he failed to invoice. Liquidynamics argues that Macklin's testimony supported the jury's verdict.

When a verdict or trial court decision is challenged for insufficiency of evidence or as being contrary to the evidence, an appellate court does not reweigh the evidence or pass on the credibility of the witnesses. If the evidence, when considered in the light most favorable to the prevailing party, supports the verdict, the verdict will not be disturbed on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 407, 266 P.3d 516 (2011).

After a careful review of the record, we believe sufficient evidence supported the jury's verdict on the waiver issue. A party is discharged from the obligation to perform a contract when the other party to the contract voluntarily and intentionally renounces the

16

right of performance or exhibits action or inaction that is inconsistent with that right. PIK Civ. 4th 124.26 (2016 Supp.). Waiver "implies that a party has voluntarily and intentionally renounced or given up a known right, or has caused or done some positive act or positive inaction which is inconsistent with the contractual right." *United American State Bank & Trust Co. v. Wild West Chrysler Plymouth, Inc.*, 221 Kan. 523, 526, 561 P.2d 792 (1977). Intention may be inferred from conduct. See *Iola State Bank v. Biggs*, 233 Kan. 450, 458-59, 662 P.2d 563 (1983).

Here, the jury had sufficient evidence of waiver. Macklin testified that he worked around 280 hours during his relationship with Liquidynamics. He further testified that he repeatedly invoiced Liquidynamics for fewer hours than he actually worked, in part, because he believed that he was in a joint venture and he wanted to keep the production costs low for Liquidynamics. Liquidynamics manager McClatchey testified that he told Macklin to bill for all the hours that he worked, otherwise Liquidynamics would not be able to pay for the work completed. While there may have been a mistake in understanding about the nature of the relationship on Macklin's part, the evidence indicates that he intended to only bill for some of the hours he worked. In the light most favorable to Liquidynamics, the prevailing party, the jury's verdict is supported by evidence of intentional waiver of the right to compensation for those hours worked.

Affirmed.